**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 27, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CLEARONE COMMUNICATIONS,
INC., a Utah corporation,

      Plaintiff - Appellee,

v.

LONNY BOWERS; JUN YANG;
ANDREW CHIANG; WIDEBAND
SOLUTIONS, INC., a Massachusetts
corporation; VERSATILE DSP, a
Massachusetts corporation,

      Defendants - Appellants.


DONALD BOWERS; DAVID
SULLIVAN; DIAL HD, INC.,

      Interested Parties - Appellants.

Nos. 09-4092; 09-4094; 09-4100;
09-4166; 09-4167; 09-4168; 09-4169;
09-4182; 09-4237; 10-4020; 10-4087;
10-4152

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 2:07-CV-00037-TC-DN)**

---

Randolph Frails, Augusta, Georgia, for Defendants-Appellants Andrew Chiang,
Jun Yang, Lonny Bowers, WideBand Solutions, Inc., Versatile DSP, Inc., Donald
Bowers, David Sullivan, and Dial HD, Inc.

James E. Magleby (Christine T. Greenwood, Christopher M. Von Maack, and
Jennifer Fraser Parrish, with him on the briefs), of Magleby & Greenwood, P.C.,
Salt Lake City, Utah, for Plaintiff-Appellee.

---

Before **BRISCOE,** Chief Judge, **HOLLOWAY** and **HOLMES**, Circuit Judges.

_____

**BRISCOE**, Chief Judge.

_____

Plaintiff ClearOne Communications, Inc. (ClearOne) filed suit against defendants Andrew Chiang, Jun Yang, Lonny Bowers, WideBand Solutions, Inc., and Versatile DSP, Inc. (collectively the WideBand defendants), alleging misappropriation of trade secrets. ClearOne also asserted claims against Chiang and Yang for breach of fiduciary duty, as well as claims against Yang for breach of contract and breach of the duty of good faith and fair dealing. The case proceeded to trial, where the jury found in favor of ClearOne on all of its claims. The district court entered a final judgment, as well as a permanent injunction, in favor of ClearOne. The district court subsequently found that the WideBand defendants, in connection with interested parties Donald Bowers, DialHD, and David Sullivan, violated the terms of the permanent injunction. Accordingly, the district court expanded the scope of its permanent injunction to include the activities of these interested parties. The WideBand defendants and the interested parties (collectively the Appellants) have filed a number of appeals, including the twelve consolidated appeals now at issue. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

# I

## A. Factual background

### ClearOne's purchase and ownership of the Honeybee Code

ClearOne is a Utah corporation with its principal offices in Utah. At the time of its inception in the early 1980's, ClearOne, which was then known as Gentner Communications Corporation (Gentner), manufactured and sold equipment exclusively for the radio broadcasting market. In the early 1990's, Gentner sought to expand its product offerings by entering the audio teleconferencing equipment market. Gentner determined that, in order to do so successfully, it had to first develop a method of dealing with acoustic echo, which occurs when sound from a loudspeaker is picked up by a microphone in the same room. Accordingly, in 1991, Gentner assigned a team of its engineers to develop an acoustic echo cancellation (AEC) process using a special computer chip called a digital signal processor (DSP). The team first created an algorithm to accomplish the task of AEC. The team then programmed the algorithm into the DSP chips. That process involved first translating the algorithm into "high-level" computer programming language, or source code. The source code was then converted into a lower-level programming language called assembly code, and finally into object code, which is a sequence of binary number instructions.

Gentner's engineering team produced its first AEC product approximately two years later. That product, however, did not perform well in the market. The

3

engineering team thus continued to work on AEC technology and in 1997 completed the Gentner Distributed Echo Cancellation (DEC) algorithm that was subsequently utilized in a line of AEC products called Audio Perfect. The Audio Perfect line of products helped Gentner capture the largest market share in the commercial audio market.

In the spring of 2000, Gentner began investigating the possibility of purchasing the assets, including the intellectual property, of a company called ClearOne, Inc. (Old ClearOne). Gentner did so for two reasons. First, Gentner was interested in obtaining a videoconferencing computer program, nicknamed Killerbee, that Old ClearOne was developing. Second, Gentner was looking to expand into the tabletop teleconferencing market and was aware that Old ClearOne had developed and was close to marketing a portable tabletop teleconferencing phone, the Old ClearOne speakerphone, that utilized an internally developed AEC algorithm, nicknamed the Honeybee Code. The advantage to Gentner of purchasing the Honeybee Code was that it would allow Gentner immediate entry into the tabletop market, as opposed to Gentner's engineering team having to internally develop a unique AEC product for the tabletop market.

Gentner's vice president of technology, Tracy Bathurst, was assigned to perform due diligence on Old ClearOne's products prior to Gentner entering into a purchase agreement with Old ClearOne. Bathurst traveled to Old ClearOne's

4

offices in May 2000, met with each of Old ClearOne's engineers, including defendant Yang, and reviewed the source code for both the Killerbee and Honeybee products.

In July 2000, Gentner entered into an asset purchase agreement with Old ClearOne, pursuant to which Gentner, in exchange for approximately $3,758,000, purchased most of Old ClearOne's assets, including its intellectual property and its corporate name. As part of the asset purchase, Gentner kept Old ClearOne's Massachusetts office open and employed some of Old ClearOne's engineers, including Yang, to continue work on the Honeybee and Killerbee projects. In order to protect the confidentiality of the Honeybee and Killerbee source codes, Gentner required Yang and the other Old ClearOne employees to sign confidentiality and noncompetition and invention assignment agreements.

Gentner, which changed its name to ClearOne following completion of the asset purchase agreement, subsequently attempted to market the Old ClearOne speakerphone. Sales, however, were disappointing. Consequently, in the summer of 2002, ClearOne removed the speakerphone from the market and destroyed its remaining inventory of the speakerphones. ClearOne in turn placed the Honeybee source code into its archive, thereby making it available to its engineers for possible future use.

*Biamp and Echonology*

Biamp Systems (Biamp) is a small, Oregon-based company that designs,

5

manufactures, and sells commercial audio equipment, and thus competes directly with ClearOne in the commercial audio market. Prior to 2002, Biamp had licensed AEC technology from another company for use in its Voice Crafter acoustic echo canceller. By the spring of 2002, however, sales of the Voice Crafter were fading. Because Biamp did not own the rights to, and thus could not modify, the AEC technology used in the Voice Crafter, and because it had not been able to develop internally its own AEC technology, Biamp began looking for other sources from which to license AEC technology.

In June 2002, Biamp was approached by defendant Lonny Bowers, who alleged that he represented a company called Echonology, L.L.C. (Echonology). Lonny Bowers stated that Echonology was comprised of himself, Yang (who left his employment with ClearOne in the spring of 2001), and defendant Chiang, the former president and a former shareholder of Old ClearOne. Lonny Bowers informed Biamp that Echonology was interested in providing Biamp with AEC technology.

The president of Biamp, Ralph Lockhart, subsequently exchanged e-mail messages with Chiang. Chiang informed Lockhart that Echonology's technologies concentrated in the areas of AEC and line echo cancellation. Lockhart in turn asked Chiang to submit to him any materials that could provide Biamp with a better insight into Echonology and the work its shareholders had previously performed at ClearOne or Old ClearOne. Chiang provided Lockhart

6

with a resume that indicated that Chiang, while at Old ClearOne, had successfully developed an award-winning audio conferencing phone (the Old ClearOne speakerphone). Chiang further provided Lockhart with a resume for Yang indicating that Yang had experience with AEC and line echo cancellation algorithm development.

In July 2002, Lonny Bowers, Chiang and Yang traveled to Oregon and met with Lockhart and Matthew Czyzewski, Biamp's vice president of engineering. The two Biamp representatives informed Lonny Bowers, Chiang and Yang that Biamp was looking to obtain AEC technology. Chiang and Yang in turn discussed their involvement with Old ClearOne's AEC technology.

Biamp subsequently prepared and submitted to Lonny Bowers, Chiang and Yang a specification outlining the criteria it wanted an AEC algorithm to meet. Lonny Bowers, Chiang and Yang in turn provided Biamp with a proposal for developing an AEC algorithm that would meet Biamp's specification. The proposal provided that programming of the algorithm would take approximately four months. The proposal outlined two alternative pricing options: a price of $400,000 for the object code alone; or a price of $650,000 for both the object and source code.[1] Biamp ultimately rejected the proposal, primarily due to cost

---

[1] According to the record, source code is a so-called "high-level" computer programming language that is readable by humans. Source code is ultimately converted into object code, which is a sequence of binary number instructions that is readable by the computer.

concerns.

At no point during the discussions did Lonny Bowers, Chiang or Yang inform Biamp that Echonology was a fictitious company.

*ClearOne's license agreement with Biamp*

After rejecting the proposal submitted by Lonny Bowers, Chiang and Yang, Biamp continued to look elsewhere for AEC technology. Ultimately, in late 2002, Biamp agreed to license from ClearOne the Gentner DEC algorithm. As part of the license agreement, ClearOne modified the Gentner DEC algorithm so that it would function on the computer chip utilized in Biamp's hardware. ClearOne did not provide Biamp with the source code for the modified algorithm. Instead, ClearOne gave Biamp only a disk containing the object code for the modified algorithm.

*WideBand*

In 2003, Lonny Bowers, Chiang and Yang formed WideBand Solutions, Inc. (WideBand), a Massachusetts corporation. Lonny Bowers served as president of the company, Chiang was vice president, and Yang served as treasurer and chief technology officer. Lonny Bowers raised capital for WideBand by telling potential investors that Yang played a significant role in the development of Old ClearOne's and ClearOne's AEC technology.

Yang proceeded to produce for WideBand an AEC algorithm and related software called FC101. WideBand began marketing that product in early 2004.

8

Yang in turn used the FC101 software to create a second AEC algorithm and related software product called WC301. The WC301 product was placed on the market in the third quarter of 2004.

*Versatile*

Yang subsequently created a separate Massachusetts corporation called Versatile DSP (Versatile). Yang and Versatile entered into an agreement with WideBand, pursuant to which WideBand granted Yang and Versatile the ownership rights in the object code developed by WideBand, and Yang and Versatile in turn granted WideBand the right to sublicense the object code. Although the agreement also afforded WideBand the right to purchase the source code for a predefined amount, it purported to reserve for Yang the conceptual knowledge or ideas underlying the source code.

*WideBand and Biamp*

In March 2004, WideBand met with Biamp and proposed to provide Biamp with a software license for AEC technology at a significantly lower price than Biamp was paying ClearOne to license the modified Gentner DEC algorithm. Biamp agreed to the proposal and the parties entered into a written licensing agreement. In February 2005, WideBand provided Biamp with the final version of the anticipated AEC software. Biamp's AEC-related product incorporating the WideBand AEC technology, called the AEC2W card, began shipping to consumers that same month.

9

In approximately mid-2005, Biamp and WideBand discussed the possibility of Biamp purchasing WideBand's assets, including both the source and object codes for the AEC technology that Biamp was licensing from WideBand. As part of those discussions, on September 5, 2005, Lonny Bowers sent an e-mail to Czyzewski at Biamp noting that "this algorithm [i.e., the algorithm provided by WideBand to Biamp] has functioned successfully in the market for approximately six years," "[d]ating back to the ClearOne, Inc. phone . . . ." JA at T2749. Ultimately, Biamp chose not to acquire WideBand, and instead began internally developing its own AEC algorithm. Biamp ultimately produced its own working AEC algorithm and began selling products incorporating that technology in the fall of 2006.

*ClearOne's discovery of Biamp's relationship with WideBand*

At approximately the same time that Biamp began licensing AEC technology from WideBand, it ceased licensing the modified Gentner DEC algorithm from ClearOne. After learning that Yang and Chiang were associated with WideBand, ClearOne began to investigate whether WideBand had used any of ClearOne's proprietary technology. To do so, ClearOne hired an independent engineer, purchased a Biamp AEC product, and had the independent engineer extract the object code from that product. Following completion of the engineer's work, ClearOne filed this suit.

10

## B. *Procedural background*

### *ClearOne's complaint*

On January 3, 2007, ClearOne filed suit in Utah state court against Chiang, Yang, WideBand, and Biamp asserting a variety of claims, including breach of contract (against Yang), breach of the covenant of good faith and fair dealing (against Yang), misappropriation of trade secrets (against Yang, Chiang and WideBand), threatened or future misappropriation of trade secrets (against Biamp), conversion (against Yang, Chiang and WideBand), unjust enrichment (against all defendants), breach of fiduciary duty (against Yang and Chiang), constructive trust (against Yang and Chiang), and tortious interference with business relations (against Yang, Chiang and WideBand). Chiang, Yang and WideBand removed the case to federal district court on the basis of diversity jurisdiction.

ClearOne subsequently filed four amendments to its complaint. The relevant amendments included (a) adding Lonny Bowers and Versatile as defendants (and asserting claims against them for misappropriation of trade secrets, conversion, unjust enrichment, and tortious interference), (b) asserting against Yang, Chiang, Lonny Bowers, WideBand and Versatile claims for future/threatened misappropriation of trade secrets, and (c) asserting against Biamp a claim for misappropriation of trade secrets. ClearOne's claims for conversion, unjust enrichment, and tortious interference with business relations

11

were ultimately dismissed by the district court.

*Pretrial injunction*

On August 13, 2007, ClearOne filed a motion for temporary restraining order (TRO) and preliminary injunction. In support of its motion, ClearOne alleged, in pertinent part, that on July 26, 2007, WideBand had consummated a license agreement with Harman Music Group, Inc. (Harman), a Utah corporation, pursuant to which WideBand would provide Harman with AEC technology "at a fire-sale price," id. at D2544, and would also indemnify Harman "from and against . . . any money judgment entered against" Harman if it were included in the instant action, id. at D2545.

On October 30, 2007, the district court issued an order and memorandum decision granting ClearOne's motion for preliminary injunction. Specifically, the district court enjoined "Yang, as well as his agents, servants, officers, employees, entities and those acting under his direction or control, . . . from working on or delivering any computer code—either source code or object code—to Harman until the completion of trial." Id. at D4985.

*Trial proceedings*

On October 20, 2008, ClearOne proceeded to trial against all defendants on its trade secret misappropriation claims, against Yang for breach of contract and breach of the duty of good faith and fair dealing, and against Yang and Chiang for breach of fiduciary duty. As part of its case-in-chief, ClearOne presented

12

testimony from two expert witnesses, one of whom testified that the WideBand defendants continued to possess the Honeybee Code on their personal computers after leaving employment with ClearOne, and the other of whom testified that the Honeybee Code was employed by defendant Yang to produce the algorithms he created at WideBand.

After hearing eleven days of evidence, the jury returned a special verdict finding in favor of ClearOne on each of its claims against the defendants. The jury further found that each of the defendants acted willfully and maliciously in misappropriating ClearOne's trade secrets, and that Yang and Chiang also acted willfully and maliciously in breaching their fiduciary duties to ClearOne. The jury in turn awarded ClearOne damages in the following amounts:

> • compensatory damages against Yang for breach of contract and breach of the duty of good faith and fair dealing in the amount of $3,557,000;
>
> • compensatory damages against Yang, Chiang, Lonny Bowers, Versatile and WideBand for misappropriation of a trade secret in the amount of $956,000;
>
> • compensatory damages against Biamp in the amount of $956,000;
>
> • unjust enrichment damages against Yang, Chiang, Lonny Bowers, and Versatile in the amount of $317,000;
>
> • unjust enrichment damages against WideBand in the amount of $951,000;
>
> • unjust enrichment damages against Biamp in the amount of $694,000;

13

• compensatory damages against Chiang for breach of fiduciary duty in the amount of $1,500,000;

• compensatory damages against Yang for breach of fiduciary duty in the amount of $2,000,000;

• punitive damages against Chiang for breach of fiduciary duty in the amount of $3,000,000; and

• punitive damages against Yang for breach of fiduciary duty in the amount of $4,000.000.

*Permanent injunction*

On April 9, 2009, the district court issued a permanent injunction against all of the defendants. The injunction permanently enjoined the WideBand defendants "from disclosing, using or transferring in any way the trade secret owned by . . . ClearOne . . . called the Honeybee Code (including its unique algorithms or sub-algorithms that are not in the public domain), whether in the form of source code, object code, or any other form, and any code or product substantially derived from the Honeybee Code," id. at D17520, as well as "disclosing, using, or transferring in any way the product development documentation for the Honeybee Code or any other documentation that reveals the contents of the Honeybee Code," id. at D17521. The injunction also prohibited the WideBand defendants from "marketing, selling, manufacturing, develop[ing], modif[ying], duplicat[ing], or transport[ing] or deliver[ing] . . . technology containing the Honeybee Code or any product substantially derived from the Honeybee Code . . . ." Id. The injunction prohibited Biamp "from using,

14

disclosing, or transferring the object code licensed to it by WideBand for use in its 'AEC2W' cards . . . , including use of such code to service any past or existing customers." Id. at D17522.

*Post-trial rulings and entry of final judgment*

On April 20, 2009, the district court issued an order and memorandum decision addressing various post-trial motions. The district court concluded, in pertinent part, that (a) the jury's findings in favor of ClearOne on its misappropriation of trade secrets claims against Yang and Chiang effectively preempted ClearOne's claims against Yang and Chiang for breach of fiduciary duty (since these latter claims were based on the same theft of ClearOne's trade secret), (b) ClearOne was not entitled to prejudgment interest on the damage awards, (c) "an award of exemplary damages against each of the Defendants [wa]s appropriate," id. at D17554, "in an amount equal to two times the compensatory damages" awarded against each of the WideBand defendants, id. at D17558, and "in an amount equal to the sum of its compensatory and unjust enrichment damages" with respect to Biamp, id. at D17561, and (d) ClearOne was not entitled to judgment against defendants Yang, Chiang, Lonny Bowers, or Versatile for unjust enrichment damages. The district court also calculated exemplary damages for each defendant, denied without prejudice ClearOne's request for an order pursuant to 28 U.S.C. § 1963 allowing it to register and enforce the final judgment in other jurisdictions, and denied various pro se

15

motions filed by defendant Lonny Bowers.

On that same date, a clerk's judgment was entered for attorney fees and related nontaxable expenses in the amount of: $983,879.90 in favor of ClearOne against Biamp, Versatile, WideBand, Chiang, Yang and Lonny Bowers, jointly and severally; $118,025.00 in favor of ClearOne against Biamp; and $907,645.87 in favor of ClearOne against Chiang, Yang, Lonny Bowers, WideBand, and Versatile, jointly and severally.

On April 21, 2009, the district court entered judgment in favor of ClearOne and against the defendants. The judgment stated as follows:

IT IS ORDERED AND ADJUDGED

that judgment be entered in favor of the plaintiff against (1) Andrew Chiang in the amount of $1,912,000.00 (jointly and severally with all six of the Defendants) and individually liable for $637,332.00 in exemplary damages; (2) against Jun Yang in the amount of $1,912,000.00 (jointly and severally with all six of the Defendants) and individually liable for $637,332.00 in exemplary damages; (3) against Lonny Bowers in the amount of $1,912,000.00 (jointly and severally with all six of the Defendants); (4) against Wide[B]and Solutions in the amount of $1,912,000.00 (jointly and severally with all six of the Defendants) and individually for $951,000.00 for unjust enrichment and $2,539,332.00 in exemplary damages; (5) against Versatile DSP in the amount of $1,912,000.00 (jointly and severally with all six of the Defendants) and individually liable for $637,332.00 in exemplary damages; and (6) against Biamp Systems Corp. in the amount of $1,912,000.00 (jointly and severally with all six of the Defendants) and individually liable for $694,000.00 for unjust enrichment and $1,012,666.00 in exemplary damages.

Id. at D17588.

16

*Post-judgment contempt proceedings*

On July 16, 2009, ClearOne moved to enforce the permanent injunction and for contempt. In support, ClearOne alleged that the defendants had "transferred the assets of WideBand . . . to a new, sham company called DialHD, Inc. ('DialHD')." Id. at D20339. ClearOne further alleged that DialHD was "registered to Lonny Bowers' father, Donald Bowers, . . . [was] operat[ing] out of the same Connecticut office as previously . . . occupied by WideBand," and was "continu[ing] the same business as WideBand," in particular selling "'BoardroomHD'" products that incorporated "the same trade secrets and related technology that [we]re the subject of the . . . Permanent Injunction." Id. ClearOne also alleged that the defendants, Donald Bowers, and WideBand employee David Sullivan "ha[d] conspired and transferred, hidden, and claimed to destroy, the very Wide[B]and assets that th[e] Court ordered to be preserved in at least three orders, in addition to the Permanent Injunction." Id.

On July 17, 2009, the district court directed the Appellants to appear before the court on July 31, 2009, and "show cause at that time why they should not be held in contempt of the court's orders . . . for the conduct described in" ClearOne's motion. Id. at D20411. Although the district court's order authorized the Appellants "to appear at the hearing by telephone," id. at D20412, it "strongly urge[d] [them] to appear in person," id., and warned that if they did not, "they [would] be precluded from offering testimony, offering witnesses, or cross-

17

examining witnesses," id. at D20413 (emphasis in original), and would instead be limited to "listen[ing] to the evidence presented and . . . mak[ing] argument on [their] own behalf," id. The district court also directed the Appellants to provide ClearOne with specific written disclosures prior to the July 31st hearing. Id. at D20414-15.

On July 28, 2009, Lonny Bowers, Chiang and Yang each filed pro se motions, in letter form, asking the district court to reconsider the portion of its July 17, 2009 show cause order requiring them to appear in person. Lonny Bowers alleged, in summary fashion, that he was "not able to attend th[e] hearing in person due to [his] financial situation and [his] family situation" and thus requested "to appear telephonically." Id. at D20589. Chiang, as a basis for his motion, cited his "personal financial difficulty," his involvement in a separate court hearing in Boston on July 30, 2009, and his lack of "involvement with DialHD . . . ." Id. at D20591. Yang, as the basis for his motion, cited only his involvement in the same July 30, 2009 court hearing in Boston. Id. at D20590. The district court denied these motions, noting that each defendant had the option of "appear[ing] by telephone, listen[ing] to the evidence[,] and argu[ing] on his own behalf." Id. at D20595.

On July 31, 2009, ClearOne appeared at the hearing in person through counsel. Appellants appeared on their own behalf, via telephone. The district court heard testimony from three witnesses and received exhibits submitted by

18

ClearOne. At the conclusion of the hearing, the district court issued a TRO "effective immediately as of its issuance in open court." Id. at D20682.

On August 5, 2009, the district court issued a written order memorializing its findings in support of the TRO. The district court found that ClearOne "ha[d] demonstrated a substantial likelihood of success on the merits of its claim that [certain] DialHD Infringing Products illegally utilize[d] the Honeybee Code," and "ha[d] met the other elements necessary for issuance of a TRO to preserve the status quo with regard to these products." Id. at D20683. Accordingly, the district court held that the DialHD infringing products would "be considered as subject to the same restrictions as set forth" in the permanent injunction order with respect to WideBand's infringing products. Id. The district court also ordered Donald Bowers and DialHD "not to transfer, encumber, pledge, alienate, or try to dispose of or hide any DialHD . . . assets until further order of" the court. Id. at D20684.

On August 17, 2009, Chiang, Yang and Lonny Bowers filed an emergency motion for reconsideration. Id. at D20852. In support, these three defendants complained that they were not allowed to cross-examine ClearOne's witnesses at the July 31, 2009 contempt hearing. Id. at D20853. These three defendants asked the district court to amend its TRO "in such a way as to permit Donald Bowers and Dial[HD] . . . to market, sell, manufacture, develop, modify, duplicate, and transfer DialHD products," or "set[] aside . . . the . . . TRO in its entirety . . . ."

19

Id. at D20854. Alternatively, they asked for "the opportunity for all parties subject to the July 17, 2009 Order to present evidence, offer testimony, and cross-examine [ClearOne]'s witnesses at a new hearing on all issues pertaining to [the] TRO . . . ." Id. The district court denied the motion on August 31, 2009, noting that the motion "raise[d] arguments the court ha[d] already heard and denied for various reasons apparent on the record" and thus "raise[d] nothing new and ha[d] no merit." Id. at D21401.

On October 22, 2009, ClearOne moved for an order to show cause for violation of the TRO. In support, ClearOne alleged that the Appellants had failed to remove from the market certain offending products, and that a sham Chinese company was utilizing the Honeybee Code to manufacture offending products for DialHD. On October 26, 2009, the district court directed the WideBand defendants, DialHD, and David Sullivan to appear before the court on November 9, 2009, and "show cause at that time why they should not be held in contempt of the court's orders . . . for the conduct described in" ClearOne's motion.[2] Id. at D22026. The district court prohibited any party from appearing by telephone, and provided that "[a]ny party who d[id] not appear at the November 9, 2009 hearing—either in person or through a licensed attorney who ha[d] made a formal

_____

[2] The district court's order did not list Donald Bowers because, at the time of the order, he had filed a personal Chapter 7 bankruptcy petition in Georgia, and the automatic stay issued in connection with that bankruptcy proceeding had not been lifted.

20

appearance in th[e] case—[would] be precluded from offering testimony, offering witnesses, or cross-examining witnesses." Id. at D22027 (emphasis in original).

On November 5, 2009, the WideBand defendants, DialHD, and David Sullivan filed a joint emergency motion to continue the November 9, 2009 show cause hearing. In support, they alleged that Lonny Bowers "ha[d] contracted H1N1 Influenza, and, as such, w[ould] not be able to attend the [scheduled] hearing." Id. at D22166. The district court denied the motion to continue, but granted Lonny Bowers permission "to appear by telephone to testify on direct examination and to be cross-examined." Id. at D22191.

The district court held a hearing on ClearOne's motion on November 9, 2009. On November 19, 2009, the district court issued an order finding that Lonny Bowers, Yang, WideBand, and DialHD were "in contempt of court for . . . selling WideBand's Simphonix Si-400 product in the guise of DialHD's AEC4 and HD4551 products, all of which contain[ed] the Honeybee Code." Id. at D22291. The district court rejected the assertion by Lonny Bowers, Yang, WideBand and DialHD that "an alleged 'rogue' Chinese company, Longoo," was responsible for the misconduct. Id. at D22313. The district court ordered "the Contemnors . . . to pay attorneys' fees and damages sustained by ClearOne as a result of their contemptuous behavior." Id. The district court also (a) expanded its TRO and permanent injunction "to expressly include the DialHD HD4551 product and any other DialHD product using the Honeybee Code," id. at D22351,

21

(b) directed "DialHD . . . and all those working in active concert or participation with [it to] immediately halt all development, sale, and/or marketing of all DialHD products, including in China," id., (c) directed "Contemnors [to] arrange for and obtain delivery to . . . ClearOne . . . of all code and other design materials and intellectual property covered by the" permanent injunction and TRO, id. at D22352, (d) ordered Lonny "Bowers to self-surrender to th[e] court on Friday, January 8, 2010 . . . for incarceration . . . unless and until he ha[d] proven to the court that he and WideBand . . . ha[d] . . . complied with the court's order to halt the development, sale, and/or marketing of all DialHD products," arranged for delivery of all infringing products to be delivered to ClearOne, "made full and genuine disclosures and cooperated in discovery," id., and (e) ordered "Yang to self-surrender to th[e] court on . . . January 8, 2010 . . . unless and until . . . he ha[d] proven to the court that he ha[d] made full and genuine disclosures and cooperated in discovery," id.

On January 8, 2010, the district court held a contempt hearing. Counsel for Lonny Bowers and Yang appeared at the hearing, but neither Lonny Bowers nor Yang personally appeared. After hearing arguments from counsel, the district court concluded that Lonny Bowers and Yang had failed to purge themselves of contempt, and thus issued arrest orders for them and directed that they be incarcerated until they purged themselves of contempt.

On February 11, 2010, ClearOne filed an ex parte motion for the addition

of Donald Bowers to the district court's November 19, 2009 contempt order and amended permanent injunction. In support, ClearOne alleged that on December 29, 2009, the bankruptcy court overseeing Donald Bowers' Chapter 7 bankruptcy proceedings "lifted the automatic stay, specifically to allow the contempt proceedings against Donald Bowers to go forward." Id. at D22695. The district court denied ClearOne's motion, but issued a show cause order on April 7, 2010 directing Donald Bowers to "appear personally or through counsel before the court on . . . May 27, 2010 . . . to show cause . . . why he should not be held in contempt of the court's" August 5, 2009 TRO. Id. at D22743 (emphasis in original omitted).

On May 27, 2010, the district court held the scheduled show cause hearing. Donald Bowers did not appear in person, but was represented by counsel at the hearing. On August 13, 2010, the district court issued a civil contempt order and memorandum decision finding Donald Bowers "in contempt of court for his acts violating the court's prohibition on possession, disclosure, use, marketing, or selling products containing ClearOne's stolen trade secret and the court's prohibition on diversion of Defendant WideBand Massachusetts' assets." Id. at D23424. More specifically, the district court found that Donald Bowers "surreptitiously re-packag[ed] and s[old] products containing the stolen trade secret" and "participated in the diversion of WideBand Massachusetts' assets in an attempt to avoid the WideBand Defendants' obligation to pay a multi-million

23

dollar judgment to ClearOne." Id. at D23426. The court further found that Donald Bowers "ha[d] committed fraud on the court by making false statements to the court and withholding material information from the court in a manner obstructing the court's ability to enforce its orders and final judgment against the WideBand Defendants." Id. at D23424-25. In short, the district court concluded that "[a]ll of the evidence [established] Donald Bowers' complete lack of regard for the jury verdict and the court's rulings." Id. at D23455. Accordingly, the district court directed that (a) the August 5, 2009 TRO be "expanded to expressly include Donald Bowers," id., (b) the amended permanent injunction . . . be modified and expanded "to reflect the developments" noted in its order, id., (c) "Donald Bowers, and all those working in active concert or participation with [him] . . . immediately halt all development, sale, and/or marketing of all DialHD products, including in China," id., (d) "Donald Bowers arrange for and obtain the delivery to the United States, care of ClearOne or its designated agent, of all code and other design materials and intellectual property covered by the Amended Permanent Injunction," id. at D23455-56, and "provide written evidence to the court and ClearOne confirming that he ha[d] done so, no later than . . . September 17, 2010," id. at D23456, (e) "Donald Bowers . . . self-surrender to th[e] court on . . . October 13, 2010 . . . for incarceration (or be subject to arrest through a bench warrant) unless and until he ha[d] proven to the court that he ha[d]" complied with the court's directives, id., and (f) Donald Bowers pay ClearOne's

24

reasonable attorneys' fees and costs in pursuing the contempt order against him.

On that same date, August 13, 2010, the district court also issued a second amended permanent injunction against all of the defendants in the case, as well as Donald Bowers. The injunction, in pertinent part, permanently enjoined the WideBand defendants and Donald Bowers "from disclosing, using or transferring in any way the . . . Honeybee Code (including its unique algorithms or sub-algorithms that [we]re not in the public domain), whether in the form of source code, object code, or any other form, and any code or product substantially derived from the Honeybee Code," as well as "from disclosing, using, or transferring in any way the product development documentation for the Honeybee Code or any other documentation that reveal[ed] the contents of the Honeybee Code." Id. at D23459. The injunction also listed specific infringing products, including various WideBand products, as well as "DialHD['s] . . . products sometimes identified as the 'AEC4,' the 'Mix-4' or 'Automixer,' and the HD4551; and the Longoo ACON1001." Id. at D23460.

On October 13, 2010, the district court held a hearing to determine whether Donald Bowers "had purged himself of contempt by disclosing and providing [the] specified information and infringing products." Dist. Ct. Docket No. 2319, at 1. "Based on" what it characterized as "the meager submission to th[e] court by Donald Bowers along with the fact that he did not appear at the hearing despite being ordered to do so," the district court found "that Donald Bowers ha[d] not

25

purged himself of contempt and [wa]s subject to arrest and incarceration in an attempt to coerce his compliance with the court's Contempt Order." Id. Consequently, that same day the district court issued a bench warrant for Donald Bowers for failure to appear before the court.

*WideBand defendants' motion for disclosure of "secret docket"*

On March 3, 2011, the WideBand defendants filed with the district court a pleading entitled "EMERGENCY MOTION FOR ACCESS TO 'COURT ONLY USER DOCKET.'" Dist. Ct. Docket No. 2454. In that motion, the WideBand defendants alleged that "[o]n February 11, 2011, the Magistrate issued [an order] which acknowledged the existence of a dual docketing system called the 'Court User Only Docket," id. at 1 (ending quotation mark omitted in the original), and "ordered the docket be shared with Co-Defendant Biamp systems but did not grant access to the WideBand Defendants' lead and appellate attorney . . . ." Id. The WideBand defendants further alleged that they would be "severely prejudiced [in the appellate process] by not having access to *ex parte* communications between the court and ClearOne consisting of sealed Motions and any sealed Orders." Id. at 2 (italics in original). The WideBand defendants thus "request[ed] access to the 'Court Only User Docket' by giving the docket sheets and all filings to their attorney . . . ." Id.

The district court has not yet ruled on the WideBand defendants' motion.

II

Now at issue before us are twelve consolidated appeals (Nos. 09-4092, 09-4094, 09-4100, 09-4166, 09-4167, 09-4168, 09-4169, 09-4182, 09-4237, 10-4020, 10-4087, and 10-4152) asserting fourteen general issues: (1) whether the district court abused its discretion in awarding ClearOne permanent injunctive relief that was not limited in geographic, temporal, or prohibitive scope; (2) whether the district court abused its discretion in denying the WideBand defendants' Federal Rule of Civil Procedure 60(b) motions for relief from judgment and stay of enforcement; (3) whether the district court's post-verdict damage award was impermissibly excessive; (4) whether the district court erred in denying defendant Lonny Bowers' motion to dismiss for lack of personal jurisdiction; (5) whether the special verdict form utilized by the district court was deficient for failing to require the jury to specifically find that a trade secret in fact existed and that all the elements of a misappropriation claim existed; (6) whether the district court erred in concluding that Utah law, rather than Massachusetts law, applied to ClearOne's misappropriation of trade secrets claims; (7) whether the district court erred in denying the WideBand defendants' motions for summary judgment and judgment as a matter of law; (8) whether the district court erred in granting a TRO in favor of ClearOne on August 5, 2009; (9) whether the district court violated the Appellants' due process rights by prohibiting them from cross-examining witnesses and submitting evidence at the July 31, 2009 contempt

27

hearing; (10) whether the district court's July 17, 2009 show cause order directing the Appellants to appear before it on July 31, 2009, and outlining the parameters of that hearing, violated Appellants' due process rights; (11) whether the district court properly exerted personal jurisdiction over DialHD and Donald Bowers at the July 31, 2009 contempt hearing; (12) whether the district judge erred in refusing to recuse; (13) whether the district court erred in affirming the magistrate judge's award of attorneys' fees and costs; and (14) whether the WideBand defendants' emergency motion for access to the "Court Only User Docket" should be granted (an issue that was raised for the first time in the WideBand defendants' appellate reply brief). As discussed in greater detail below, we find no merit to any of these arguments, and thus affirm the judgment and post-judgment rulings of the district court.

*Scope of permanent injunctive relief*

The Appellants contend that the district court erred in awarding ClearOne permanent injunctive relief because that relief was not limited in geographic, temporal, or prohibitive scope, and ClearOne had an adequate remedy at law. "This court reviews a district court's grant of a permanent injunction for abuse of discretion." Rocky Mountain Christian Church v. Bd. of Cnty. Comm'rs, 613 F.3d 1229, 1239 (10th Cir. 2010). "A district court abuses its discretion when it issues an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." Id. at 1239-40 (internal quotation marks omitted). "It is well settled [that] an

28

injunction must be narrowly tailored to remedy the harm shown." Garrison v.

Baker Hughes Oilfield Operations, Inc., 287 F.3d 955, 962 (10th Cir. 2002).

The second amended (and final) permanent injunction entered by the

district court on August 13, 2010, prohibited the WideBand defendants and

Donald Bowers:

> a) "from disclosing, using or transferring in any way the trade secret owned by . . . ClearOne . . . called the Honeybee Code (including its unique algorithms or sub-algorithms that are not in the public domain), whether in the form of source code, object code, or any form, and any code or product substantially derived from the Honeybee Code"; and
>
> b) "from disclosing, using, or transferring in any way the product development documentation for the Honeybee Code or any other documentation that reveals the contents of the Honeybee Code."

JA at D23459. The injunction further provided:

> Because the following "Infringing Products" contain or are substantially derived from the Honeybee Code, they are also subject to the permanent injunction: the AEC2W object code licensed to Biamp . . . ; the computer code licensed to Harman Music Group, Inc. . . . ; WideBand's FC101 product; WideBand's WC301 product; WideBand's WC301A product; WideBand's Simphonix product; DialHD, Inc.'s products sometimes identified as the "AEC4," the "Mix-4" or "Automixer," and the HD4551; and the Longoo ACON1001.

Id. at D23460. Finally, the injunction emphasized that these restrictions

"appl[ied] not only to each of the WideBand Defendants . . . , but also to each of

their agents, servants, officers, employees, entities, and those acting in concert

with them (including, but not limited to, DialHD, Inc. and Longoo in China, as

29

represented by the website www.longoocn.com), and/or those acting under their direction or control, to the fullest extent allowed by law." Id.

The Appellants first argue on appeal that the injunction is overly broad because it would require enforcement efforts "outside of the United States . . . ." Aplt. Br. at 32-33. We find this argument wholly unpersuasive. The only portion of the injunction that addresses activity outside of the United States is the language that (a) prohibits production and distribution of the Longoo ACON1001 product, and (b) prohibits "Longoo in China," or any other persons or entities acting in concert with the WideBand defendants, from violating the injunction. Far from being overly broad, this language focuses exclusively on activities that were determined by the district court to have occurred in violation of its original permanent injunction order, i.e., the production of offending products in China. Such language was, in light of the district court's findings, entirely warranted. Indeed, without this language, the district court's original permanent injunction would have been rendered meaningless.

The Appellants next argue that the injunction "has forever prohibited [them] from participating in the acoustic echo cancellation/noise reduction industry in any form or fashion anywhere and at any time." Id. at 33. They in turn argue that "[n]othing on the record supports the imposition of or can establish the necessity of an injunction of unlimited duration." Id. They further argue that "ClearOne's purported 'trade secret' could be reproduced by any party

30

reasonably versed in audio/echo cancellation software in approximately three months, and could certainly be reproduced in less than a year." Id. "Any unlawful 'head start' the WideBand Defendants may have gained at the time ClearOne was awarded the Injunction evaporated long ago," they argue, and thus the permanent injunction "is ripe for dissolution." Id. at 33-34.

We reject these arguments for a number of reasons. First, the record on appeal, including the jury's verdict, does not support the Appellants' suggestion that an identical algorithm could be developed from scratch in a year or less. Although Yang made similar assertions during his testimony at trial, those assertions were directly refuted by ClearOne's witnesses (who indicated that development of an AEC algorithm is difficult and can take years), and were likewise obviously rejected by the jury. Further, the district court, in entering the original permanent injunction against the WideBand defendants, expressly noted that "it [wa]s exceptionally difficult to create a functional [AEC] code and algorithm . . . ." JA at D17508. Second, regardless of how long it takes to develop a new AEC algorithm, the evidence presented at trial refutes the Appellants' suggestion that they, or anyone for that matter, could develop AEC software identical to the Honeybee Code. As ClearOne's witnesses explained at trial, there are a host of algorithmic and programming choices that can be made in developing competing AEC software, making it difficult, if not impossible, for two individuals working independently to produce the same algorithm. Third, the

31

district court's injunction does not effectively prohibit the Appellants from working in the audio/echo cancellation industry; rather, it simply prohibits them from making use of ClearOne's trade secret, i.e., the Honeybee Code. Fourth, Utah's Uniform Trade Secrets Act (UUTSA), under which ClearOne proceeded, expressly provides for the imposition of injunctive relief during the life of the trade secret at issue, as well as "for an additional reasonable period of time in order to eliminate commercial advantage that otherwise would be derived from the misappropriation." Utah Code Ann. § 13-24-3(1). Finally, the Appellants' post-trial contemptuous conduct clearly supports the unlimited duration of the district court's injunction. In sum, we conclude the district court did not abuse its discretion with regard to the temporal restrictions (or lack thereof) of its injunction.

The Appellants argue that injunctive relief was not warranted at all because ClearOne had an adequate remedy at law, i.e., it "obtain[ed] multimillion dollar awards against each . . . of the WideBand Defendants . . . ." Aplt. Br. at 35. Importantly, however, the district court expressly found otherwise. When the district court entered its original permanent injunction, it found that damage to ClearOne's competitive market position and goodwill was likely to occur if the WideBand defendants' use of the Honeybee Code was not enjoined. The district court noted that "[b]ecause of the value of the unique and functional Honeybee Code . . . , any possession and use by a competitor (such as Biamp and

32

WideBand) of that functional algorithm would irreparably harm ClearOne." JA at D17508. Further, the district court found that ClearOne "ha[d] established a 'cognizable danger' that the WideBand Defendants w[ould] commit future violations," and it noted that the WideBand defendants had acted willfully and maliciously in misappropriating the Honeybee Code, had been "less than forthcoming" with the court, id., and exhibited a "blatant disregard for clear duties" owed to ClearOne, and thus could not be relied on by the district court or ClearOne to act in a lawful manner, id. at 17509. Moreover, the district court concluded that "enjoining sales of specific WideBand products containing and using the Honeybee Code" was "a necessary consequence of the WideBand Defendants' misconduct," and would thus eliminate any competitive advantage WideBand obtained over ClearOne by misappropriating its technology. Id. Notably, the WideBand defendants have not attempted to refute any of these rationales. Moreover, it is apparent from the record on appeal that ClearOne has had, and is likely to continue to have, difficulty in actually collecting on the monetary judgments entered in its favor against the WideBand defendants. Thus, the injunctive relief awarded by the district court may end up being the more meaningful of the two forms of relief. In sum, then, we conclude there was no abuse of discretion on the part of the district court in imposing a permanent injunction in addition to the damage awards.

Lastly, the Appellants argue that the injunction fails to delineate between

33

the general knowledge and experience possessed by Yang, and the trade secrets owned by ClearOne. The injunction, they argue, should have allowed Yang to "make productive use of [his] own skill[s] and knowledge" obtained during his education and career. Aplt. Br. at 36.

We reject these arguments. The language of the injunction focuses narrowly on the Honeybee Code, its algorithm and sub-algorithms, its supporting documentation, and the products created by the Appellants that utilized the Honeybee Code. Nothing in the permanent injunction prohibits, or remotely purports to prohibit, Yang from creating, from scratch (or from publicly available materials), his own new and unique AEC algorithms. Thus, there was no abuse of discretion on the part of the district court.

*Denial of WideBand defendants' Rule 60(b) motions*

The WideBand defendants contend that the district court erred in denying what they describe as their Federal Rule of Civil Procedure 60(b) motions for relief from judgment and stay of enforcement.[3] "We review for abuse of discretion a district court's denial of a Rule 60(b) motion, keeping in mind that Rule 60(b) relief is extraordinary and may only be granted in exceptional circumstances." Dronsejko v. Thornton, 632 F.3d 658, 664 (10th Cir. 2011) (internal quotation marks omitted).

---

[3] As will be discussed, there were actually three pro se Rule 60(b) motions filed by defendant Lonny Bowers, and those motions were joined by Chiang and Yang, appearing pro se.

On June 1, 2009, less than two months after the district court entered final judgment, Lonny Bowers filed a pro se motion "for relief of judgment and stay enforcement."[4] JA at D19650. Lonny Bowers argued, in pertinent part, that "[t]he subject of Honeybee's secrecy ha[d] been improperly evaluated in th[e] case." Id. at D19652. In support, Lonny Bowers alleged that, based upon his discussions with Old ClearOne employees, the Honeybee Code was never treated by Old ClearOne or its employees as a trade secret, and thus could not have become a trade secret upon its acquisition by Gentner/ClearOne. Lonny Bowers also complained that ClearOne had improperly withheld from the WideBand defendants, until the time of trial, the nature of ClearOne's trade secret (as well as related documents), and had thus effectively prevented the district court and the jury "from hearing 'all' the facts in th[e] litigation." Id. at D19661.

On June 2, 2009, Lonny Bowers filed a second pro se motion "for relief of judgment and stay enforcement." Id. at D19131. Lonny Bowers alleged in the motion that he had obtained from the Library of Congress a copy of ClearOne's copyright submission for the Honeybee Code, and that after reviewing that submission, it was apparent to him that ClearOne had committed fraud on the copyright office by making false representations in its copyright application. Lonny Bowers further alleged that the elements ClearOne alleged to be its trade

---

[4] The WideBand defendants proceeded pro se in the district court from February 10, 2009 to August 12, 2009.

secret were actually "present in PictureTel patent 5305307 and open source code called 'Speex' available at no cost to anyone with an internet connection." Id. at D19133. Lonny Bowers in turn argued that "[t]he representations made by ClearOne that this specific code was 'Honeybee' code which was copied and used by the Defendants [wa]s false, fraudulent and calculated." Id. Lastly, Lonny Bowers alleged that he and the other WideBand defendants were not privy to what ClearOne's alleged trade secret was until the time of trial, and thus were unable to compare that alleged trade secret to publicly available information.

On June 19, 2009, Lonny Bowers filed a pro se emergency motion for evidentiary hearing. Id. at D19883. In that motion, Lonny Bowers called into question the veracity of ClearOne's expert witness, Thomas Makovicka (who opined at trial that the WideBand codes were substantially similar to, and indeed based upon, the Honeybee Code), and alleged that he had new evidence that would establish that the similarities between the WideBand codes and the Honeybee Code were based upon publicly available information, rather than trade secret information possessed by ClearOne. Defendants Yang and Chiang subsequently filed pro se motions to join Lonny Bowers' Rule 60(b) motions.

On July 20, 2009, the district court issued an order and memorandum decision denying Lonny Bowers' first two motions, as well as Yang's and Chiang's motions to join. Id. at D20417-18. At the outset of its order, the district court outlined how it had handled the confidentiality of the Honeybee Code

36

during the litigation. The district court noted that a confidentiality order "was issued relatively early in pre-trial proceedings after ClearOne and the WideBand Defendants (including Lonny Bowers), through their attorneys, filed motions seeking a confidentiality order . . . ." Id. at D20418. That confidentiality order, the district court noted, "allow[ed] any party, in good faith, to designate information as 'CONFIDENTIAL' (i.e., for the eyes of parties, outside counsel, and independent outside experts only) or 'HIGHLY CONFIDENTIAL' (i.e., for the eyes of outside counsel and independent outside experts only) before disclosing the information for litigation purposes." Id. at D20419. "Throughout the litigation," the district court noted, "the parties used the designations frequently, including the 'HIGHLY CONFIDENTIAL' designation for the claimed trade secret, the Honeybee Code." Id. The district court further noted that the WideBand defendants' "independent outside expert, Dr. Richard Koralek, had access to 'HIGHLY CONFIDENTIAL' information (i.e., the Honeybee Code) and testified about the code during trial." Id.

The district court then turned to the issues raised by Lonny Bowers in his two Rule 60(b) motions. The court first addressed Lonny Bowers' contention "that ClearOne deliberately withheld crucial portions of the Honeybee Code until trial, when it was too late to mount a reasonable defense." Id. at D20423. "Underlying [that] contention," the district court stated, "[wa]s the assumption that only he and . . . Yang . . . , but not his counsel or independent outside expert

37

witness, could ascertain the public domain elements of the Honeybee Code and bring to the court's and jury's attention that, in his view, the Honeybee Code was not a trade secret at all." Id. The district court rejected that assumption as a basis for granting Rule 60(b) relief. Second, the district court rejected as "not persuasive" Lonny "Bowers's claim that the redacted first and last twenty-five pages of the Honeybee source code (out of hundreds, if not thousands, of pages)," which were contained in ClearOne's copyright application, "somehow reveal[ed] that ClearOne ha[d] no trade secret, and that ClearOne ha[d] perpetrated a fraud on the court . . . ." Id. at D20425. More specifically, the district court concluded that "[t]he limited amount of source code disclosed as part of ClearOne's submission to the Library of Congress or in its copyright application d[id] not disclose the trade secret's algorithms or implementation of those algorithms, all of which were discussed at trial and in the jury instructions." Id. at D20424-25. In other words, the district court concluded, although "no one disputed that some aspects of the Honeybee Code were in the public domain," "those aspects were not what ClearOne claimed as a trade secret." Id. at D20425. Instead, the district court noted, "ClearOne's trade secret [wa]s greater than the sum of its parts." Id. Third, the district court concluded that Lonny "Bowers's other arguments [we]re equally ineffective" and were based on evidence (for example, the Honeybee Code, the Honeybee copyright, and defendants' own affidavits) that "was in the hands of the defendants before trial." Id. Fourth, the district court emphasized

38

that the Honeybee Code, as well as all other information labeled "Highly Confidential," "was available to . . . [Lonny] Bowers's attorneys and independent outside expert witness" well prior to trial, and it noted that Lonny "Bowers and . . . Yang attended many hearings, and the trial of course, where much of this information was discussed." Id. at D20427. In other words, the district court concluded, "[n]one of the evidence cited by . . . [Lonny] Bowers in his two motions qualifie[d] as 'newly discovered,' because the information upon which he relie[d] was previously produced to . . . [Lonny] Bowers, through counsel, during the litigation or was readily ascertainable by exercising reasonable diligence." Id. Fifth, the district court concluded that, "[i]n any case, the evidence [cited by Lonny Bowers] [wa]s not material, and [wa]s, for the most part, cumulative, so presenting it would not produce a different result at trial." Id. Accordingly, the district court held that Lonny Bowers had not met his burden under either Rule 60(b)(2) or (b)(3). Id. at D20427-28.

On July 28, 2009, the district court denied Lonny Bowers' pro se emergency motion for evidentiary hearing. In doing so, the district court held that Bowers' "assertion that he ha[d] discovered 'new evidence,' and his accusation that ClearOne and its expert witness perpetrated fraud on the court and jury relating to the Texas Instruments FFT evidence [i.e., public source information provided by Texas Instruments], [we]re, at best, completely unfounded under the law and the facts." Id. at D20587.

39

In challenging the district court's rulings on appeal, the WideBand defendants take issue with the district court's conclusion that all of the relevant information was available to them and their counsel prior to trial. To begin with, the WideBand defendants complain that their "previous counselors" were allowed by the district court to withdraw, leaving them "scrambling to obtain new counsel only three months prior to trial."[5] Aplt. Br. at 39. Consequently, they argue, because "this was a complex case given all of the technical terms, tests, and analyses involved," the attorneys who they retained to represent them at trial, "who were by no means experts in the acoustic echo cancellation/noise reduction industry[,] were ill-equipped, through no fault of their own, to review and make determinations on the origin and nature of the 'Honeybee Code.'" Id. at 37. We need not address these arguments, however, because they were not included in Lonny Bowers' pro se Rule 60(b) motions and were thus never addressed by the district court. See Turner v. Pub. Serv. Co., 563 F.3d 1136, 1143 (10th Cir. 2009) ("Absent extraordinary circumstances, we will not consider arguments raised for

[5] The record on appeal establishes that the WideBand defendants replaced their initial counsel in December of 2007, after approximately a year of litigation, and that the WideBand defendants' second counsel was allowed to withdraw in June of 2008 due, in part, to philosophical differences with the WideBand defendants. The WideBand defendants hired their third set of counsel in mid-July 2008, approximately three months prior to trial. It was this third set of counsel who ultimately represented the WideBand defendants at trial. The third set of counsel were allowed to withdraw on February 10, 2009, prior to the entry of final judgment. Thereafter, the WideBand defendants proceeded pro se until August 12, 2009, when their current counsel was admitted to represent them.

the first time on appeal.").

The WideBand defendants next argue that they "could not even determine what ClearOne's 'trade secret' was until halfway through trial, because . . . Chiang, [Lonny] Bowers, WideBand Solutions, and Versatile DSP *never had possession of the contested software's readable source code . . . .*" Aplt. Br. at 37 (emphasis in original). In other words, the WideBand defendants argue, they personally "learned of the very information upon which ClearOne's case in chief was based only days before the verdict was reached, at a time where they would have had no fair or reasonable opportunity to conduct discovery or otherwise prepare and gather evidence and testimony in response to the information in question." Id. at 38-39. "It was thus a miscarriage of justice," they contend, for the district court "to deny [them] the opportunity to bring new, compelling evidence before [the court] once they were able to definitively see, for the first time since the case began, what ClearOne's claims were based upon, and that its trade secret claims were without merit." Id.

We reject this argument. As the district court noted in denying Lonny Bowers' Rule 60(b) motions, it is undisputed that all of the relevant information, including the Honeybee source code, was made available to the WideBand defendants' counsel and their expert witness, Richard Koralek, well prior to trial. Indeed, defense counsel hired Koralek specifically to examine and compare the codes at issue, and Koralek testified at trial that, in his opinion, all portions of the

41

Honeybee Code were available in the public domain and thus could not constitute a trade secret, either individually or collectively. Obviously, however, the jury rejected Koralek's testimony and instead chose to accept the testimony of ClearOne's expert witness, Thomas Makovicka, who testified that the critical algorithms in the Honeybee Code were not in the public domain, the critical algorithms in the WideBand codes were essentially the same as the Honeybee Code, and there were other indications that the WideBand codes had been directly copied from the Honeybee Code. Although Lonny Bowers and the other WideBand defendants disagree with Makovicka's opinions and the jury's verdict, nothing in Lonny Bowers' pro se motions remotely justified relief under Rule 60(b)(1), i.e., "mistake, inadvertence, surprise, or excusable neglect," or Rule 60(b)(3), i.e., "fraud . . . , misrepresentation, or misconduct by" ClearOne.

Finally, the WideBand defendants contend that there was insufficient evidence to allow the jury to find them liable for misappropriation because ClearOne "never showed that [they] possessed or had actual knowledge of the [Honeybee] source code." Aplt. Br. at 37. The initial, and ultimately fatal, problem with this argument is that it was not asserted in Lonny Bowers' pro se Rule 60(b) motions, and instead is being asserted for the first time on appeal. See Turner, 563 F.3d at 1143. Even if we were to ignore this procedural obstacle and reach the merits of the argument, it is apparent to us, after reviewing the trial transcript, that ClearOne presented sufficient evidence to allow the jury to infer

42

that each of the WideBand defendants were in actual or constructive possession of the Honeybee source code.

*District court's post-verdict damage award*

The WideBand defendants argue that the exemplary damages awarded by the district court to ClearOne after trial were impermissibly excessive. We review for abuse of discretion the district court's exemplary damage award. See Ensminger v. Terminix Int'l Co., 102 F.3d 1571, 1576 (10th Cir. 1996) (reviewing for abuse of discretion punitive damages awarded by the district court under Kansas law); see also Read Corp. v. Portec, Inc., 970 F.2d 816, 826 (Fed. Cir. 1992) ("An award of enhanced damages for [patent] infringement, as well as the extent of the enhancement, is committed to the discretion of the trial court."), abrogated on other grounds by Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995).[6]

The district court's exemplary damages award, which was issued on April 20, 2009, just prior to the entry of final judgment, was made, at ClearOne's

_____

[6] The comments to Section 3 of the Uniform Trade Secrets Act, upon which the UUTSA is based, state that the exemplary damages provision "follows federal patent law in leaving discretionary trebling to the judge even though there may be a jury," and cites the exemplary damages provision of federal patent law. Unif. Trade Secrets Act § 3, cmt. Thus, decisions involving a district court's award of exemplary damages for patent infringement, such as Read, are persuasive. The parties also agreed in the district court that the decision to award exemplary damages was a matter of the district court's discretion. See JA at D13778-79 (Biamp's brief in opposition to ClearOne's motion for final judgment), D14003 (WideBand defendants' brief in opposition to ClearOne's motion for final judgment).

43

request, pursuant to Section 4(2) of the UUTSA, which provides that "[i]f willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award," Utah Code Ann. § 13-24-4(2), of damages for "actual loss caused by the misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss," id. § 13-24-4(1). The district court concluded that, with respect to the WideBand defendants, "an award of exemplary damages . . . [wa]s appropriate," JA at D17554, "in an amount equal to two times the compensatory damages" awarded against each of the WideBand defendants, id. at D17558. In other words, the district court awarded ClearOne the maximum amount of exemplary damages against the WideBand defendants that was statutorily authorized under the UUTSA. In support of its award, the district court noted that the UUTSA's exemplary damages provision was modeled after federal patent law, i.e., 35 U.S.C. § 284. Id. at D17553. In turn, the district court looked to federal case law construing federal patent law, and noted that "[c]ourts have focused most of their analyses on three factors, which are: (1) whether the defendant deliberately copied the ideas or design of another; (2) whether the defendant held a good faith belief that the conduct did not infringe on another's rights; and (3) the defendant's behavior as a party to the litigation." Id. (citing Read, 970 F.2d at 826-27). The district court also noted that "additional factors have been identified and applied in decisions addressing whether to award exemplary

44

damages: (4) the defendant's size and financial condition; (5) the closeness of the case; (6) the duration of the defendant's conduct; (7) remedial action taken by the defendant; (8) the defendant's motivation for harm; and (9) whether the defendant attempted to conceal the misconduct." Id. at D17554 (citing Read and other cases). Applying those factors in light of the evidence presented at trial and the jury's findings, the district court concluded that:

(1) the WideBand defendants acted willfully in misappropriating the Honeybee Code;

(2) "none of the WideBand Defendants held a good faith belief that the copying and use of [the] Honeybee Code trade secret was proper," id. at D17555;

(3) "[t]he WideBand Defendants' behavior during the litigation . . . compound[ed] their problems" because "Yang lied during his deposition," "Chiang . . . made a 'sudden discovery' of materials" "late in the litigation," the WideBand defendants in general often resisted ClearOne's discovery efforts and offered "less than convincing" reasons therefor, id. at D17556, the district court "had to enter a preliminary injunction to halt WideBand's intended licensing and transfer of object code at issue in the litigation to non-party Harman Music Group even after ClearOne instituted the lawsuit," id. at D17556-57, the district court "held 'show cause' hearings to determine whether certain WideBand Defendants had violated two different court orders," id. at D17557, and "the magistrate judge sanctioned the WideBand Defendants for discovery abuses by awarding approximately $36,000 in attorneys' fees to ClearOne," id.;

(4) the WideBand defendants "attempted to conceal their misconduct," id.; and

(5) "the case was not a close call," id.

The district court also placed "[s]pecial weight . . . on the jury's verdict," id., and

45

found "[p]articularly compelling . . . th[e] fact that the jury found willful and malicious misappropriation and awarded not only substantial compensatory damages to ClearOne but substantial punitive damages as well," id. at D17558.[7] In sum, the district court concluded that "an award of exemplary damages would accomplish the public objective of punishing and deterring malicious conduct." Id.

On appeal, the WideBand defendants assert four challenges to the district court's reasoning. First, they argue that "ClearOne never definitively demonstrated that [Lonny] Bowers, WideBand Solutions, or Versatile DSP ever had actual knowledge or possession of the source code at issue in this case." Aplt. Br. at 42-43. The initial problem with this argument is that the WideBand defendants have not directly challenged the sufficiency of the evidence supporting the jury's findings. In any event, we have already noted that, having reviewed the trial transcript, we believe the evidence presented at trial was sufficient to establish that each of the WideBand defendants possessed the Honeybee source code, either directly or constructively. Moreover, the jury specifically found that

[7] As noted in Section I.B of our opinion, the jury found in favor of ClearOne on its claims against Chiang and Yang for breach of fiduciary duty, and in turn assessed punitive damages against Chiang and Yang in the amounts of $3,000,000 and $4,000,000, respectively. The district court subsequently concluded, however, "that the . . . claims of breach of fiduciary duty against . . . Yang and . . . Chiang [we]re based on their theft of the Honeybee Code," and that, "[c]onsequently, the claim[s] for breach of fiduciary duty [were] preempted." JA at D17548. Accordingly, the final judgment did not include the punitive damages assessed by the jury against Chiang and Yang.

each of the WideBand defendants, including Lonny Bowers, WideBand, and Versatile, knowingly and maliciously misappropriated the Honeybee Code. We thus reject the WideBand defendants' first argument.

The WideBand defendants next argue that, "had the [district court] not abused its discretion by preventing [them] from impeaching [ClearOne's] Trial Exhibit 156 and ClearOne's expert witness testimony [from Thomas Makovicka], the jury's ultimate deliberation would have likely been, at the very least, a close call."[8] Id. at 43. According to the WideBand defendants, "[t]heir experts would have been able to impeach . . . Makovicka's test results, and they would have proven that the tests that ClearOne's experts performed on ClearOne's echo cancellation units and WideBand's units were egregiously flawed, because the tests could not make a comparison between the actual software that was operating inside each of the units." Id.

We find no merit to this argument. To begin with, the WideBand defendants fail to identify who "their experts" are. Presumably, they are referring either to one or more of the individual WideBand defendants, or to hypothetical experts that they would have hired had the district court granted Lonny Bowers' Rule 60(b) motions and afforded all of the WideBand defendants a new trial. In any event, we conclude that this argument is nothing more than a rehash of the

---

[8] Exhibit 156 is a document, prepared by Makovicka in anticipation of trial, that analyzed "the commonality of [certain] routines in" the Honeybee and WideBand FC101 source codes. JA at T1721 (capitalization in original omitted).

47

WideBand defendants' challenge to the district court's denial of Lonny Bowers' pro se Rule 60(b) motions.  For the reasons we have already discussed, the district court did not abuse its discretion in denying those motions.

In their third argument, the WideBand defendants contend that the district court "failed to take several crucial Read factors into consideration," id. at 44, including "the Defendants' size and financial conditions," id., "the duration of [their] supposed wrongful conduct," id. at 45, and "whether they had taken any remedial action during the course of litigation," id.  The defendants, however, are clearly mistaken.  In considering the amount of exemplary damages to impose, the district court expressly outlined all of the Read factors, but ultimately discussed in detail only the ones it found relevant under the facts of this case.  In other words, the district court did not ignore or overlook the three Read factors now cited by the defendants; instead, the district court effectively concluded that none of those factors weighed heavily, if at all, in the defendants' favor.  And our own review of the record on appeal supports that conclusion.  Of these three factors, only the size/financial condition factor remotely favors defendants.  As for the other two factors, the record clearly establishes that the WideBand defendants' wrongful conduct continued well past the time of trial, and indeed necessitated several show cause hearings and, ultimately, orders of contempt.

In sum, we conclude the district court did not abuse its discretion in awarding exemplary damages equal to double the amount of actual damages

48

imposed by the jury against the WideBand defendants.

*Request for new trial based on excessiveness of damage award*

As part of their challenge to the district court's exemplary damage award, the WideBand defendants also argue that reasonable persons could infer that, due to the excessiveness of the district court's damage award, the trial of this matter, as well as the civil processes preceding and following it, were tainted by prejudice and other improper influences and that, consequently, the judgment should be reversed. Id. at 45. In support, the WideBand defendants argue that "[t]he record, from start to finish, is replete with procedural irregularities that would lead a reasonable person to believe that the resulting verdict—which nearly exceeded four million dollars—was solely the product of passion and prejudice." Id. at 46. "For example," they note, "during closing arguments, ClearOne's counsel averred, in open court (and while gesturing towards . . . Chiang and Yang) that if the jury found in favor of [the WideBand defendants], hundreds of local jobs would be lost." Id. "Nevertheless," they assert, "the Trial Judge neither admonished nor sanctioned counsel for making this statement, despite its inflammatory nature," and ultimately concluded, "in response to Defendants' reference to this incident in their Motion for New Trial, . . . that th[e] action was harmless." Id. "The problem was compounded," defendants argue, "by a Trial Court which made statements to the effect that (a) it already considered the WideBand Defendants guilty prior to trial and (b) would do all it could to assist

49

ClearOne in 'collecting' its judgment." Id.

Although the WideBand defendants do not identify precisely what district court ruling they are appealing, a review of the record on appeal indicates that these same arguments, in nearly identically worded form, were asserted by Lonny Bowers in a pro se motion for new trial filed on March 12, 2009. The district court rejected that motion as both premature and "lack[ing] merit." JA at D17565. More specifically, the district court held that "the damages award [wa]s supported by the evidence." Id. at D17566. "To the extent [that Lonny] Bowers relie[d] on the court's adverse rulings as evidence of lack of impartiality," the district court concluded, "he [failed to] establish[] bias . . . ." Id. "As for judicial statements [Lonny Bowers] contend[ed] were prejudicial, such statements," the district court held, "were not made during trial and so could not have influenced the jury." Id. Lastly, the district court held that "any allegedly inappropriate statement made by [ClearOne's] counsel during closing argument was harmless." Id.

We review for abuse of discretion the district court's denial of a motion for new trial on the grounds of excessive damages. Fitzgerald v. Mountain States Tel. & Tel. Co., 68 F.3d 1257, 1261 (10th Cir. 1995). Absent an award "so excessive . . . as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial," we will not grant relief. Hardeman v. City of Albuquerque, 377 F.3d 1106,

1121 (10th Cir. 2004).

After reviewing the record on appeal, including the trial transcript, we conclude that the district court's exemplary damage awards were not so excessive as to shock the judicial conscience or to raise an irresistible inference that the awards were the result of passion or prejudice. Indeed, as we have already noted, the jury found that each of the WideBand defendants acted willfully and maliciously in misappropriating ClearOne's trade secret, and the district court reasonably took this into account in determining the amount of punitive damages to impose.

Further, we conclude that the purported procedural irregularities cited by the WideBand defendants are baseless. For example, in alleging that ClearOne's counsel made improper statements during closing arguments, the WideBand defendants failed to cite in their appellate brief where in the record on appeal those statements were purportedly made, and our own review of the trial transcript failed to substantiate the allegation. Following our inquiry at oral argument about these purported statements, the WideBand defendants filed a letter pursuant to Fed. R. App. 28(j) citing a page in the trial transcript in which ClearOne's counsel, following the return of the jury's findings in favor of ClearOne on its claims for misappropriation, made arguments to the jury in support of ClearOne's request for punitive damages. Contrary to the WideBand defendants' assertions in their appellate brief, ClearOne's counsel neither

gestured towards the individual WideBand defendants[9] nor argued "that if the jury found in favor of [the WideBand defendants], hundreds of local jobs would be lost." Aplt. Br. at 46. Moreover, the WideBand defendants' counsel made no objection at trial to the arguments now cited in the WideBand defendants' Rule 28(j) letter.

*Denial of Lonny Bowers' motion to dismiss for lack of personal jurisdiction*

Lonny Bowers argues that the district "court could not legally exercise personal jurisdiction over" him. Aplt. Br. at 47 (capitalization in original omitted). Although he does not specifically say so, Lonny Bowers clearly appears to be challenging the district court's denial of his motion to dismiss for lack of personal jurisdiction.

On October 10, 2007, Lonny Bowers filed a motion to dismiss ClearOne's Third Amended Complaint on the grounds that the district court lacked personal jurisdiction over him. In support, Lonny Bowers argued that he was a longtime Connecticut resident who had never resided in Utah, had never maintained any business office or business license in Utah, and owned no property and paid no taxes in Utah. Lonny Bowers further argued that he had only visited Utah on four occasions, two of which were in his capacity as a corporate representative of

---

[9] According to the record on appeal, the individual WideBand defendants were not present during this portion of the trial. Consequently, contrary to the assertions of the WideBand defendants' counsel at oral argument in this appeal, the WideBand defendants could not have taken contemporaneous notes regarding what was said by ClearOne's counsel.

52

WideBand to conduct business with a customer, Harman. The other two occasions, Bower asserted, were to attend hearings in this lawsuit as a corporate representative of WideBand.

On November 27, 2007, the district court held a hearing on Lonny Bowers' motion, at the conclusion of which it denied the motion, concluding that Lonny Bowers "is here [in Utah] and would be here under the Utah long-arm statute for conducting business and for directing tortious conduct toward Utah." JA at T635-36.

We review de novo a district court's order denying a motion to dismiss for lack of personal jurisdiction. See Benton v. Cameco Corp., 375 F.3d 1070, 1074 (10th Cir. 2004). "Where the district court considers a pre-trial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." AST Sports Sci., Inc. v. CLF Distrib. Ltd., 514 F.3d 1054, 1056-57 (10th Cir. 2008).

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1159 (10th Cir. 2010). Utah's long-arm statute "authorizes jurisdiction to the full extent of the federal constitution." Id.; see Utah Code

53

Ann. § 78B-3-201(3); see also Starways, Inc. v. Curry, 980 P.2d 204, 206 (Utah 1999) (stating that the "Utah long-arm statute must be extended to the fullest extent allowed by due process of law"). Consequently, the panel "need not conduct a statutory analysis apart from the due process analysis." Emp'rs Mut. Cas., 618 F.3d at 1159.

"The due process analysis consists of two steps." Id. "First, we consider whether the defendant has such minimum contacts with the forum state that he should reasonably anticipate being haled into court there." Id. (internal quotation marks omitted). "This minimum-contacts standard may be satisfied by showing general or specific jurisdiction." Id. "Second, if the defendant has the minimum contacts with the forum state, we determine whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." Id. (internal quotation marks omitted). "This analysis is fact specific." Id.

Here, the facts presented to the district court at the time of its ruling on Lonny Bowers' motion to dismiss established that it had specific, but not general, jurisdiction over Lonny Bowers. Although Lonny Bowers did not have "continuous and systematic general business contacts with" the state of Utah, Trujillo v. Williams, 465 F.3d 1210, 1218 n.7 (10th Cir. 2006) (discussing general jurisdiction), he admittedly traveled to Utah on two occasions as a representative of WideBand, including on one occasion to license WideBand's AEC technology

54

to Harman, a Utah-based company. In addition to his personal visits to Utah, Lonny Bowers also exchanged numerous e-mails and had other communications with Harman in Utah in the process of negotiating and executing a licensing deal. Lastly, ClearOne presented evidence indicating that Lonny Bowers' actions, including entering into the licensing agreement with Harman, caused injuries to ClearOne in Utah. For these reasons, we conclude that Lonny Bowers "purposefully availed [himself] of the privilege of conducting activities or consummating a transaction in" Utah, and that by doing so, he caused injuries to ClearOne that became one of the subjects of this litigation. Emp'rs Mut. Cas., 618 F.3d at 1160 (discussing requirements for specific jurisdiction). Accordingly, we in turn conclude Lonny Bowers had sufficient minimum contacts with the state of Utah to reasonably have expected to be haled into court there in connection with his WideBand-related activities.

Lonny Bowers contends, citing Ten Mile Industrial Park v. Western Plains Service Corp., 810 F.2d 1518, 1527 (10th Cir. 1987), that these contacts are not sufficient to bring him within the personal jurisdiction of the district court because they were all committed "in his capacity as a representative of WideBand," Dist. Ct. Docket No. 517, at 5, and thus "the corporate shield doctrine . . . prevents [him] from personally being hauled into Utah," id. at 6. Lonny Bowers, however, misconstrues both Ten Mile and the corporate shield doctrine. As this court recently explained in Rusakiewicz v. Lowe, 556 F.3d

1095, 1102 (10th Cir. 2009), "Ten Mile held that the [district] court [in that case] lacked jurisdiction over an 'executive committee' of a corporation for the contacts made by the corporation," based on "[t]he rationale . . . that an officer in a corporation is not personally liable for all the acts of the corporation . . . ." In other words, "an officer of a corporation is 'not personally liable for torts of the corporation or of its other officers and agents merely by virtue of holding corporate office, but can only incur personal liability by participating in the wrongful activity.'" Rusakiewicz, at 1103 (quoting Armed Forces Ins. Exch. v. Harrison, 70 P.3d 35, 41 (Utah 2003)). In the instant case, the record firmly establishes that Lonny Bowers participated in the wrongful activity, and thus the corporate shield doctrine has no applicability to him.

The remaining question is whether the district court's exercise of personal jurisdiction over Lonny Bowers would offend traditional notions of fair play and substantial justice. Lonny Bowers "bears the burden of presenting a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Emp'rs Mut. Cas., 618 F.3d at 1161 (internal quotation marks and brackets omitted). "This reasonableness analysis requires the weighing of five factors: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in

furthering fundamental social policies." Id. (citing Pro Axess, Inc. v. Orlux

Distrib., Inc., 428 F.3d 1270, 1279-80 (10th Cir. 2005)).

Notably, Lonny Bowers made no attempt in his motion to dismiss to

discuss any of these five factors, nor does he on appeal. Necessarily, then, he

failed to carry his burden of presenting a compelling case that the district court's

exercise of personal jurisdiction over him would be unreasonable. And, even

ignoring Lonny Bowers' failure, we conclude that the district court's exercise of

jurisdiction over him was, in fact, reasonable. To begin with, there is no

indication that litigating the case in Utah was substantially more burdensome for

Lonny Bowers than litigating it elsewhere. Indeed, Lonny Bowers, as a

shareholder and officer of WideBand, was already involved in this litigation, and

there was no assertion that the district court's exercise of jurisdiction over

WideBand was improper. Second, Utah has a reasonable, if not substantial,

interest in the resolution of this dispute, given that ClearOne is a Utah-based

corporation. See id. at 1162-63. Third, Utah was undoubtedly one of the most

efficient locations for the dispute to have been resolved, given the district court's

conclusion that the UUTSA governed ClearOne's misappropriation of trade

secrets claims, as well as the fact that ClearOne's key witnesses all haled from

Utah. Lastly, the exercise of jurisdiction over Lonny Bowers in Utah did not

"affect[] the substantive social policy interests of other states," in pertinent part

because no other state's laws apply to ClearOne's claims against the WideBand

57

defendants.  Id. at 1164.

Thus, in sum, we conclude the district court properly denied Lonny Bowers' motion to dismiss for lack of personal jurisdiction.

*Special verdict form*

The WideBand defendants contend that the special verdict form utilized by the district court was deficient because it failed to require the jury to expressly find (a) whether or not a trade secret in fact existed, and (b) the presence or absence of all the elements of ClearOne's misappropriation claims.  "We review decisions as to the wording of . . . special verdict forms under an abuse of discretion standard."  Kelly v. Metallics W., Inc., 410 F.3d 670, 674 (10th Cir. 2005).  "In assessing whether the district court properly exercised that discretion, we must examine the instructions [and verdict form] as a whole to determine whether they sufficiently cover[ed] the issues, facts and evidence in the case."  Id. (internal quotation marks omitted).

The WideBand defendants asserted these same arguments below in a written objection to the district court's proposed special verdict form. Specifically, the WideBand defendants argued that "[t]he special verdict should require the jury to examine every element of every claim" because doing so could potentially be "'useful in facilitating review, uniformity, and possibly postverdict judgments as a matter of law.'" JA at D12044 (quoting Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 39 (1997)).  In turn, the defendants argued:

The danger of not instructing the jury on every element is particularly keen in this case. This is because the Court's [proposed] special verdict [form] asks only whether each defendant misappropriated "a trade secret", without first identifying that trade secret and without first asking whether a trade secret exists. The danger here is that the jury may determine that the defendants or some of them had the Honey[b]ee Code in their possession, without first requiring the jury to satisfy itself that ClearOne proved all of the elements that would make the Honey[b]ee Code a trade secret. If the jury does not find that the Honeybee [C]ode satisfies the elements of a trade secret, all remaining questions about misappropriation and damages are moot.

Moreover, misappropriation is both an element of a trade secret misappropriation claim and the name of the tort. The Court's special verdict, however, asks the jury only whether each defendant misappropriated "a trade secret." The ambiguity caused by the special verdict is that, in spite of the jury instructions, it inadvertently reduces the elements of the claim to one — misappropriation. This ambiguity can only be resolved by having the jury specifically address each element of the tort.

Id. at D12044-45.

The district court rejected the WideBand defendants' objections.

Consequently, the special verdict form provided to the jury read, in pertinent part,

as follows:

3a.    Did Lonny Bowers misappropriate a trade secret possessed by ClearOne? Answer "Yes" or "no" according to your unanimous verdict.
Answer: Yes_____ No_____

3b.    Did Andrew Chiang misappropriate a trade secret possessed by ClearOne? Answer "Yes" or "no" according to your unanimous verdict.
Answer: Yes_____ No_____

3c.    Did Versatile DSP, Inc. misappropriate a trade secret

59

possessed by ClearOne?  Answer "Yes" or "no" according to your unanimous verdict.
Answer: Yes_____ No_____

3d.    Did Wide[B]and Solutions, Inc. misappropriate a trade secret possessed by ClearOne?  Answer "Yes" or "no" according to your unanimous verdict.
Answer: Yes_____ No_____

3e.    Did Jun Yang misappropriate a trade secret possessed by ClearOne?  Answer "Yes" or "no" according to your unanimous verdict.
Answer: Yes_____ No_____

JA at D12473-74.  In returning a verdict in favor of ClearOne, the jury answered "Yes" to each of these questions.  Id.

In assessing whether the district court abused its discretion in rejecting the WideBand defendants' objection to the special verdict form, we begin by reviewing the district court's instructions to the jury.  Those instructions, in addressing ClearOne's misappropriation of trade secrets claims, first outlined for the jury the essential elements of those claims:

INSTRUCTION NO. 17

ClearOne's next two claims are against all Defendants: Biamp Systems Corporation, Lonny Bowers, Andrew Chiang, Versatile DSP, Inc., Wide[B]and Solutions, Inc. and Jun Yang . . . .  In both of these claims, ClearOne alleges that the Defendants misappropriated ClearOne's trade secrets.  To recover on a claim of misappropriation of a trade secret, ClearOne must prove by a preponderance of the evidence each of the following:
    1.    that ClearOne possessed a trade secret;
    2.    that the particular Defendant (again, remember you must consider the evidence against and the liability of each Defendant separately) either: (a) acquired the trade

60

secret through a confidential relationship with ClearOne or (b) acquired the trade secret from a person or company who the particular Defendant knew or had reason to know had acquired the trade secret through a confidential relationship with ClearOne;

3.     that the particular Defendant used or disclosed the trade secret without ClearOne's permission; and

4.     that ClearOne was damaged and/or that the particular Defendant benefitted as a result of the particular Defendant's actions.

Id. at D12445.

The instructions then explained to the jury the nature of the trade secret

that ClearOne claimed to own:

INSTRUCTION NO. 18

ClearOne claims as trade secrets the algorithms and the implementation of those algorithms that are reflected and embodied in the Honeybee Code. ClearOne considers source code and object code to be part of the Honeybee Code. ClearOne also claims that its product development documentation for the Honeybee Code is a trade secret. For convenience, I will refer to all this information together as the "Honeybee Code" or "Honeybee Algorithms." It is the Honeybee Code that ClearOne alleges was misappropriated by Mr. [Lonny] Bowers, Mr. Chiang, Versatile, Wide[B]and, and Dr. Yang.

* * *

Because the Honeybee Code, including one or more of the Honeybee Algorithms, is the claimed trade secret at issue here, you should first decide whether the Honeybee Code is a trade secret. To establish that the Honeybee Code is a trade secret, ClearOne must prove that the Honeybee Code:

(a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(b) is the subject of efforts that are reasonable under the

61

circumstances to maintain its secrecy.

A trade secret can exist in a combination of characteristics and components, each of which, by itself, is generally known, or, in other words, is in the public domain, but the unified process, design and operation of which, in unique combination is not generally known and differs significantly from other processes, designs or operations that are generally known.

Id. at D12446-47.

In turn, the instructions outlined the requirements that ClearOne had to prove to establish the existence of its claimed trade secret:

INSTRUCTION NO. 19

To determine that a trade secret exists you must first decide whether the information was indeed secret when the particular Defendant's allegedly wrongful conduct occurred. Matters that are generally known to the public at large or to people in a trade or business are not trade secrets. (In this trial, you have heard that concept described as "in the public domain.") Information cannot be considered a trade secret if it would be ascertainable with reasonable ease from publicly available information (i.e., if it is "readily ascertainable").

Absolute secrecy is not necessary for information to qualify as a trade secret. There is no requirement that no one else in the world possess the information. Instead, you should determine whether, under the circumstances, reasonable measures were taken to maintain the information's secrecy.

Id. at D12448.

INSTRUCTION NO. 20

A trade secret must be valuable either to ClearOne or to its business rivals in the sense that, as long as it is secret, the information provides ClearOne with an actual or potential competitive advantage over its rivals. To help you determine

62

whether ClearOne enjoyed either an actual or potential competitive advantage, you may consider such things as:

1.      the degree to which the information was generally known or readily ascertainable by others;

2.      the extent to which ClearOne used or uses the information in its business;

3.      whether the information allows ClearOne to earn increased profits or operate its business more efficiently;

4.      what gain or benefits the particular Defendant obtained from the information;

5.      what money, efforts, and time was expended to develop the information; and

6.      the ease or difficulty of acquiring or duplicating the information through independent development, research of publicly available information, or taking apart and analyzing a product properly acquired to learn its secrets (a process called "reverse engineering").

Id. at D12449.

## INSTRUCTION NO. 21

ClearOne must prove that reasonable measures were taken to protect the secrecy of the trade secret. There is no precise definition of what "reasonable measures" are; what is reasonable depends on the situation. Factors you may wish to consider in evaluating whether "reasonable measures" were taken could include the following:

1.      whether the owner of the trade secret made it a practice to inform its employees or others involved with its business that the information was a trade secret and/or was to be kept confidential;

2.      whether the owner of the trade secret required employees or others involved with its business to sign confidentiality agreements regarding the information or agreements not to compete in areas that could use the information;

3.      whether the owner of the trade secret restricted access to

63

the information on a "need to know" basis; and

4.　whether the owner of the trade secret generally maintained reasonable security to protect the alleged trade secret, and did not voluntarily disclose it to others, except in confidence.

Id. at D12450.

Considering all of these instructions, none of which the WideBand defendants challenge on appeal, together with the special verdict form employed by the district court, we conclude there was no abuse of discretion on the part of the district court in refusing to require the jury to specifically answer (a) whether or not a trade secret existed, or (b) whether each of the essential elements of ClearOne's misappropriation claims were satisfied with respect to each of the WideBand defendants. The instructions outlined above clearly informed the jury that the existence of a trade secret was an essential element of ClearOne's misappropriation claims. The instructions also correctly outlined each of the remaining essential elements of those claims. Thus, because "a jury is presumed to follow its instructions," Weeks v. Angelone, 528 U.S. 225, 234 (2000), when the jury answered "Yes" to each of the special interrogatory questions quoted above (i.e., "Did [the particular defendant under consideration] misappropriate a trade secret possessed by ClearOne?), they necessarily had to have found the existence of each of the essential elements of ClearOne's misappropriation claim, including that ClearOne possessed a trade secret, namely the Honeybee Code.

64

Consequently, there is no merit to the concerns expressed by the WideBand defendants regarding the special verdict form employed by the district court.

*District court's choice-of-law decision*

The WideBand defendants contend the district court erred in concluding that Utah law, rather than Massachusetts law, applied to ClearOne's misappropriation of trade secrets claims. Generally speaking, "[w]e review [a] district court's choice-of-law determination de novo." Emp'rs Mut. Cas. Co., 618 F.3d at 1170. However, as we discuss in greater detail below, the WideBand defendants' choice-of-law arguments are barred by the invited error doctrine.

On August 13, 2007, ClearOne filed a motion for a temporary restraining order and preliminary injunction. In its motion, ClearOne cited exclusively to Utah law, specifically the UUTSA, in discussing the likelihood of success on the merits of its misappropriation claims. JA at D2558. The WideBand defendants filed an objection to ClearOne's motion. In addressing the likelihood of success issue, the WideBand defendants made a number of related arguments, including the following:

> Also, because Plaintiff [ClearOne] admittedly withdrew the Honeybee [C]ode and the Speaker Phone technology from the market by 2002, years before the alleged misappropriation, the Honeybee [C]ode was abandoned in that it was not in continued use at the time of the alleged misappropriation. Schwartz v. Schering-Plough Corp., 53 F. Supp. 2d 95, 101(D. Mass. 1999).

JA at D3251. The WideBand defendants further argued, again citing Schwartz,

65

that ClearOne could "make no showing that any part of the Honeybee [C]ode ha[d] been in 'continuous use' by [ClearOne] as required by Massachusetts law." Id. at D3274.

ClearOne subsequently filed a pleading entitled "Bench Memorandum Responding to WideBand Defendants' Choice of Law Arguments." Id. at D4425. In that pleading, ClearOne argued that Massachusetts law did not apply to its claims. Instead, ClearOne argued, Utah law applied to its claims because (a) the choice-of-law provisions in both the asset purchase agreement between itself and Old ClearOne and the non-compete agreement signed by Yang provided for the application of Utah law, and (b) Utah had the most significant relationship to ClearOne's claims. Id. at D4426. Consequently, ClearOne argued, "the modern approach in the [UUTSA] (as stated in the Restatement (Third) of Unfair Competition), govern[ed] the definition of what constitute[d] a 'trade secret' in this case – not the first Restatement of Torts, which might be the law in Massachusetts." Id.

The WideBand defendants in turn filed a response to ClearOne's bench memorandum. Id. at D4472. Therein, the WideBand defendants argued that a choice of law analysis required the application of Massachusetts law. Id. at D4474. In support, the WideBand defendants argued that "[a]t all relevant times," they "were employed in the Commonwealth of Massachusetts," and that WideBand was "a Massachusetts corporation with an office in Massachusetts."

66

Id. at D4477.  More importantly, the WideBand defendants argued, "the bulk of the work performed on the subject algorithms was performed in Massachusetts, and the alleged malfeasance purportedly occurred in Massachusetts."  Id.  Thus, the WideBand defendants argued, "Massachusetts clearly ha[d] the most significant relationship to the underlying facts of th[e] case, and to the alleged conduct about which [ClearOne] [was] complain[ing]."  Id.

On October 30, 2007, the district court issued an order and memorandum decision granting ClearOne's motion for a preliminary injunction.  In doing so, the district court determined "that ClearOne ha[d] a substantial likelihood of success on [its] breach of contract claims against . . . Yang," and thus did "not address the likelihood of success on ClearOne's claims of misappropriation of trade secrets . . . ."  Id. at D4972.  Consequently, the district court did not resolve the choice-of-law issue argued by the parties in their respective pleadings.

The WideBand defendants subsequently filed motions for summary judgment.  In those motions, the WideBand defendants did not renew their choice-of-law arguments or otherwise argue that Massachusetts law was controlling as to ClearOne's misappropriation claims.  Instead, they asserted that the UUTSA governed ClearOne's misappropriation claims, JA at D6751, D6758-59, and preempted all of ClearOne's state law claims based on unauthorized use of the Honeybee Code, id. at D6764-65.

On the same date that they filed their motions for summary judgment, the

67

WideBand defendants also filed a motion to join Biamp's motion for summary judgment. Id. at D6845-46. Biamp, in its motion for summary judgment, argued, in pertinent part, that because "the Honeybee Code resided in Massachusetts at the time that . . . Yang had access to it and [allegedly] misappropriated it," "Massachusetts law [thus] control[led] whether the Honeybee Code [wa]s a trade secret." Id. at D6671. According to the record on appeal, the district court never ruled on the WideBand defendants' motion to join Biamp's motion.

In any event, on August 20, 2008, the district court issued an order and memorandum decision denying Biamp's motion for summary judgment. Id. at D8302. In doing so, the district court did not definitively rule on the issue of whether Utah or Massachusetts state law applied to ClearOne's misappropriation claims. Instead, the district court stated as follows:

> Finally, Biamp asserts that ClearOne's discontinuance of the phone that used the Honeybee Code undisputedly establishes that ClearOne had abandoned the Honeybee Code itself. Biamp then argues that under Massachusetts law, a trade secret must be in continuous use. Even assuming arguendo that Massachusetts law applied on this point, Biamp does not give the court enough law or facts to conclude that the Honeybee Code could not have been considered "in use." The record reflects that ClearOne did not consider the Honeybee Code obsolete, even though ClearOne stopped using that code in its phones. Because ClearOne is in the business of making phones run by code, a jury could conclude that ClearOne retained the Honeybee Code for future use or further development for use in its phones.

Id. at D8304-05.

At trial, the WideBand defendants again asserted that Utah law applied to

ClearOne's misappropriation of trade secrets claims. For example, in their motion for judgment as a matter of law, the WideBand defendants argued, in pertinent part, that Utah law was "controlling" as to those claims. Id. at D12024.

On appeal, the WideBand defendants now complain that, "[i]n spite of the profound impact a ruling on the choice of law issue would have had on the case, the [district court] never issued a ruling of any kind on the matter." Aplt. Reply Br. at 21-22. "As a result," the WideBand defendants argue, they "were forced to proceed under the auspices of Utah law." Id. at 22. And, they further argue, the district court's "oversight in this regard undoubtedly led in large part to not only the denial of [their] summary judgment motions, but also resulted in the return of a jury verdict in ClearOne's favor." Id. More specifically, the WideBand defendants argue that, had the district court correctly applied Massachusetts law, it would have been required to conclude, under the uncontroverted facts, that the Honeybee Code did not constitute a valid trade secret because ClearOne had, prior to the alleged misappropriation, ceased using the Honeybee Code and declared that it had no value.

We conclude that these arguments are barred by the invited error doctrine. "The invited-error doctrine precludes a party from arguing that the district court erred in adopting a proposition that the party had urged the district court to adopt." FTC v. Accusearch Inc., 570 F.3d 1187, 1204 (10th Cir. 2009) (internal quotation marks omitted). In other words, the invited error doctrine "prevents a

69

[party] or counsel from lying in wait for potential mistakes, and then seeking to reverse the outcome of trial." United States v. OldBear, 568 F.3d 814, 826 (10th Cir. 2009). Invited error is a form of waiver, i.e., "'the intentional relinquishment or abandonment of a known right.'" United States v. Teague, 443 F.3d 1310, 1314 (10th Cir. 2006) (quoting United States v. Olano, 507 U.S. 725, 733 (1993)). As we have outlined, although the WideBand defendants initially asserted that Massachusetts law applied to ClearOne's misappropriation claims, they subsequently abandoned that position and argued, both in their summary judgment motions[10] and in their motion for judgment as a matter of law, that the UUTSA applied to ClearOne's misappropriation claims. In short, the WideBand defendants "intentionally relinquished or abandoned" their argument that Massachusetts law applied to ClearOne's misappropriation claims. Richison v. Ernest Grp., Inc., 634 F.3d 1123, 1127 (10th Cir. 2011) (discussing difference between waiver and forfeiture in civil proceedings).

*Denial of summary judgment and motion for JMOL*

The WideBand defendants argue that the district court erred in denying their motions for summary judgment, as well as their motion for judgment as a

---

[10] Although it is true that the WideBand defendants sought to join Biamp's motion for summary judgment, and that Biamp raised the choice-of-law issue in its motion, the district court never granted the WideBand defendants' motion to join. Moreover, the district court, in denying Biamp's summary judgment motion, never definitively ruled on the choice-of-law issue. And, most importantly, the WideBand defendants ultimately argued at trial that Utah law applied to ClearOne's misappropriation claims.

70

matter of law (JMOL). We have clearly held, however, "'that a denial of summary judgment based on a genuine dispute of material facts becomes moot and unreviewable after trial since the dispute as to the facts has been resolved.'" Snyder v. City of Moab, 354 F.3d 1179, 1184 n.2 (10th Cir. 2003) (quoting 19 Wm. Moore et al., Moore's Federal Practice § 205.8 (3d ed. 1999)). Consequently, we will focus exclusively on the denial of the WideBand defendants' motion for JMOL. See id. (noting that "where a party is denied summary judgment by the district court on grounds that were genuine issues of material fact, the proper avenue of appeal lies in challenging the denial of [JMOL] rather than the denial of summary judgment.").

We review de novo the district court's denial of a motion for JMOL, applying the same standard as the district court. Rocky Mountain Christian Church, 613 F.3d at 1235. "A party is entitled to JMOL only if the court concludes that 'all of the evidence in the record . . . [reveals] no legally sufficient evidentiary basis for a claim under the controlling law.'" Wagner v. Live Nation Motor Sports, Inc., 586 F.3d 1237, 1244 (10th Cir. 2009) (quoting Hysten v. Burlington N. Santa Fe Ry. Co., 530 F.3d 1260, 1269 (10th Cir. 2008)). "Drawing all reasonable inferences in favor of the nonmoving party, . . . we thus will reverse the district court's denial of the motion for JMOL if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." Id. (internal quotation marks omitted).

71

On October 28, 2008, at the conclusion of ClearOne's evidence at trial, the WideBand defendants filed a motion for JMOL addressing ClearOne's misappropriation of trade secrets claims. JA at D12019. In that motion, the WideBand defendants argued that, because "Old ClearOne disclosed the Honeybee Code in its entirety to [ClearOne's chief technology officer Tracy Bathurst] and to his engineering team [prior to ClearOne acquiring Old ClearOne's assets and] without requiring him or anyone else to sign a non-disclosure agreement," the secrecy of the Honeybee Code was not adequately maintained and thus it could not qualify as a trade secret under Utah law. Id. at D12024.

The WideBand defendants also joined in Biamp's motion for judgment as a matter of law. Id. at D12020. Biamp argued that it was entitled to judgment as a matter of law on ClearOne's misappropriation claim because "there [wa]s no evidence that any claimed trade secret: (i) was in fact a trade secret [or] (ii) was misappropriated." Id. at D12117. In support, Biamp argued that (a) there was no evidence that the Honeybee development documentation or the Honeybee sub-algorithms had actual or potential value, or were ever misappropriated by any of the defendants, (b) there was no evidence that the Honeybee Code, as a whole, was valuable or had been misappropriated by any of the defendants, and (c) there was no evidence that Biamp knew or had reason to know of any misappropriation on the part of the WideBand defendants.

72

The district court summarily denied the motions on the record at trial that same day (October 28, 2008). Id. at T2917 ("I think the evidence is sufficient under the standards you submit to [go to] the jury.").

On appeal, the WideBand defendants argue that, contrary to the district court's ruling, the evidence presented at trial "clearly showed . . . that ClearOne took little or no steps during the development of the Honeybee Code to maintain its secrecy." Aplt. Br. at 57. Obviously, however, this argument is not framed in terms relevant to a motion for JMOL. As our standard of review makes clear, the question is not which view of the evidence is most compelling or believable, but rather whether the evidence presented at trial was sufficient to allow the jury to find in ClearOne's favor on this point.

A review of the trial transcript establishes that ClearOne presented a variety of evidence relevant to this issue. To begin with, in the asset purchase agreement between Gentner/ClearOne and Old ClearOne, Old ClearOne expressly warranted that it had taken all reasonable steps to maintain the secrecy of the intellectual property it was selling to Gentner/ClearOne, including the Honeybee Code. Likewise, Chiang, in his capacity as the president of Old ClearOne, signed a separate document warranting that the representations made by Old ClearOne in the asset purchase agreement were true. In light of these documents, it appears that, notwithstanding the fact that Old ClearOne was willing to show the Honeybee Code (as it then existed) to Gentner's/ClearOne's technology staff prior

73

to the asset purchase, nothing about those actions destroyed the secrecy of the

Honeybee Code. Second, the evidence presented at trial indicated that, even

though Old ClearOne allowed Gentner/ClearOne's technology staff to view

portions of the Honeybee Code (as it then existed; at that point, it had not been

completed), Old ClearOne did so under relatively strict conditions. Specifically,

Old ClearOne required Gentner's/ClearOne's employees to travel to Old

ClearOne's Massachusetts office to view the Honeybee Code, allowed

Gentner's/ClearOne's employees to view the Honeybee Code only with Old

ClearOne employees present and observing, and was unwilling to send the

Honeybee Code or portions thereof to Gentner/ClearOne. Third, Old ClearOne

did not deliver the Honeybee Code to Gentner/ClearOne until after the asset

purchase agreement was executed. Fourth, following completion of the asset

purchase agreement, Gentner/ClearOne placed the Honeybee Code in its

document control system where it remained, at all times relevant to this litigation,

secure. Fifth, ClearOne's expert witness, Makovicka, testified that he was unable

to find either the Honeybee algorithm as a whole, or its key components, in the

public domain. Considered together, we conclude that this evidence was

sufficient to allow the jury to reasonably find that both Old ClearOne and

Gentner/ClearOne took reasonable steps to maintain the secrecy of the Honeybee

Code.

The WideBand defendants also argue that the district court "erred in

74

finding that the Honeybee Code had independent economic value, . . . since ClearOne abandoned the Code by ceasing to produce products containing the Code." Id. at 58. In turn, the WideBand defendants argue that, "[c]ontrary to the [district court's] belief, the 'continuous use' doctrine is a well-established component of Massachusetts trade secret law . . . ." Id. at 58-59. There are two fatal problems with these arguments. First, these were not raised in any of the defendants' motions for JMOL. Second, as we have already discussed, the WideBand defendants intentionally relinquished the choice-of-law issue that is central to their "non-use" arguments. Thus, in sum, the "non-use" arguments are waived.

*The district court's August 5, 2009 TRO*

The Appellants contend that the district court erred in granting a TRO in favor of ClearOne on August 5, 2009.[11] We review for abuse of discretion a district court's decision to grant a TRO. Winnebago Tribe of Neb. v. Stovall, 341 F.3d 1202, 1205-06 (10th Cir. 2003). "The standard for abuse of discretion is high." Id. at 1205. The appellant "must show that the district court committed an error of law (for example, by applying the wrong legal standard) or committed

---

[11] The heading to this argument in the Appellants' opening brief refers to the district court granting ClearOne's "motion to expand its permanent injunction." Aplt. Br. at 59 (capitalization in original omitted). In the actual discussion section, however, the Appellants state that their challenges are in fact directed at the district court's "August 5, 2009 TRO . . . ." Id. at 62. We will thus assume the Appellants' arguments are aimed exclusively at the August 5, 2009 TRO.

75

clear error in its factual findings." Id. "We have previously described abuse of discretion as an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." Id. at 1205-06 (internal quotation marks and citation omitted).

The Appellants contend the district court abused its discretion because the August 5, 2009 TRO "was not based upon a full review of *all* relevant facts . . . ." Aplt. Br. at 62 (emphasis in original). This is because, they complain, they "were not allowed to refute ClearOne's evidence or to offer evidence of their own . . . ." Id. Further, they argue, "there were no 'merits' to have success upon, as, save a Motion to extend the reach of its Permanent Injunction, ClearOne has filed no causes of action against DialHD, and it is apparent that ClearOne has no intention of doing so for the foreseeable future." Id.

As ClearOne notes persuasively in response, however, any challenges to the August 5, 2009 TRO have been rendered moot by the district court's issuance of (a) the November 19, 2009 contempt order, which amended the permanent injunction to add DialHD and Longoo products to the order's definition of "Infringing Products," and expressly named DialHD and Longoo as entities enjoined under the order, JA at D22290-353, and (b) the August 13, 2010 second amended permanent injunction, which, pursuant to the findings set forth in the district court's contempt order of that same date, added Donald Bowers as a person being enjoined, id. at D23423-57. See Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 314 (1999) ("Generally, an

76

appeal from the grant of a preliminary injunction becomes moot when the trial court enters a permanent injunction, because the former merges into the latter."); Smith v. Ill. Bell Tel. Co., 270 U.S. 587, 588 (1926) (holding that order granting preliminary injunction was not appealable because permanent injunction was subsequently granted and thus "the interlocutory injunction had become merged in the final decree").

Even if we were to assume that the Appellants' challenges to the August 5, 2009 TRO have not been rendered moot, we conclude there is no merit to those challenges. To the extent the Appellants complain that they were not allowed to present evidence relevant to the issuance of the TRO, that is because they chose not to appear in person at the July 31, 2009 contempt hearing that resulted in the issuance of the August 5, 2009 TRO. Consequently, as the district court expressly warned in its July 17, 2009 show cause order, they were "precluded from offering testimony, offering witnesses, or cross-examining witnesses." JA at D20413 (emphasis omitted). In other words, although they would have been afforded the opportunity to present witnesses and exhibits, and to cross-examine ClearOne's witnesses, had they personally appeared at the contempt hearing, they intentionally waived those rights by choosing not to personally appear at the contempt hearing. Moreover, the Appellants were subsequently afforded several opportunities by the district court, after the issuance of the August 5, 2009 TRO, to submit evidence and arguments and to appear at hearings on the contempt

77

issues prior to the issuance of the August 13, 2010 second amended permanent injunction.

We likewise reject the Appellants' argument that "there were no 'merits' to have success upon, as, save a Motion to extend the reach of its Permanent Injunction, ClearOne has filed no causes of action against DialHD, and it is apparent that ClearOne has no intention of doing so for the foreseeable future." Aplt. Br. at 62. Appellants have not, as required by 10th Cir. R. 28.2(C)(2), "cit[ed] the precise reference in the record where the issue was raised and ruled on." And our own review of the voluminous record on appeal fails to establish that DialHD ever asserted any such argument below. Consequently, the argument is not properly before us on appeal. See McKissick v. Yuen, 618 F.3d 1177, 1189 (10th Cir. 2010).

*The district court's July 17, 2009 show cause order*

The Appellants contend that the district court's July 17, 2009 show cause order, which directed them to appear in person at the July 31, 2009 contempt hearing and outlined the parameters of that hearing, violated their due process rights because it "unequivocally denied [them] the opportunity to present evidence in support of their positions and to counter opposing testimony and evidence [if] they did not attend the July 31, 2009 [contempt] hearing in person." Aplt. Br. at 64. "We review questions of constitutional law de novo." Citizens for Responsible Gov't State Political Action Comm. v. Davidson, 236 F.3d 1174,

78

1193 (10th Cir. 2000).

The district court's order "was particularly prejudicial," Appellants argue, "in that it did not take exigent circumstances into account." Aplt. Br. at 64. "For example," they argue, "there was no provision allowing the parties to present evidence and testimony in the event of travel difficulties, illness, or other unforeseen and uncontrollable circumstances." Id. at 64-65. Appellants further argue that, had they been afforded the opportunity to present evidence at the July 31, 2009 contempt hearing, the district court "would have in all likelihood found that ClearOne could not show a likelihood of success on the merits." Id. at 67.

As with the previous issue, it appears that any challenges to the district court's July 17, 2009 show cause order have been rendered moot by the district court's subsequent hearings and issuance of the second amended permanent injunction. More specifically, the district court conducted additional hearings and afforded the Appellants additional opportunities to appear and present evidence prior to the issuance of its second amended permanent injunction in August 2010. Consequently, any alleged deficiencies in its July 17, 2009 show cause order appear to be irrelevant.

Assuming, for purposes of argument, that the Appellants' arguments have not been rendered moot, we conclude there is no merit to them. "[A]t a minimum," the Due Process Clause "require[s] that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing

79

appropriate to the nature of the case." Goss v. Lopez, 419 U.S. 565, 579 (1975).

"The fundamental requisite of due process of law is the opportunity be heard, a right that has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to . . . contest." Id. (internal quotation marks and citation omitted). In our view, the district court's July 17, 2009 show cause order satisfied these requirements by providing the Appellants with notice of the pending hearing on ClearOne's motion for contempt and affording them the opportunity, at their discretion, to appear and be heard.

*Personal jurisdiction over defendants at the July 31, 2009 contempt hearing*

DialHD and Donald Bowers argue that the district court could not have properly exerted personal jurisdiction over them at the July 31, 2009 contempt hearing because ClearOne had never filed "an actual complaint" against them.[12] Aplt. Br. at 74. In turn, they argue, they should not have been held in contempt by the district court.

We conclude that this is little more than a reiteration of Appellants' challenge to the district court's August 5, 2009 TRO. For the reasons already discussed above, we conclude that DialHD and Donald Bowers were, pursuant to Federal Rule of Civil Procedure 65(d), subject to the district court's orders

---

[12] Appellants also argue, citing Federal Rules of Civil Procedure 4.1(b) and 45, that the district court's July 17, 2009 show cause order was not properly served or binding upon them because they resided more than 100 miles outside of the District of Utah. Aplt. Br. at 68-69. We need not address this argument, however, because it was not raised below.

80

because they had actual notice of the district court's original permanent injunction and were found by the district court to have acted in concert with the WideBand defendants in violating that injunction.

*District judge's failure to recuse*

The Appellants contend that the district judge should have recused herself pursuant to 28 U.S.C. § 455 "prior to the trial of this matter as well as prior to any post-trial proceedings."[13]  Aplt. Br. at 76 (capitalization in original omitted). Generally speaking, we review for abuse of discretion the denial of a motion for recusal.  <u>United States v. Mendoza</u>, 468 F.3d 1256, 1262 (10th Cir. 2006).

---

[13] Section 455 of Title 28 of the United States Code, entitled "Disqualification of justice, judge, or magistrate judge," provides, in pertinent part, as follows:

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:
* * *
(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
(i) Is a party to the proceeding, or an officer, director, or trustee of a party;
(ii) Is acting as a lawyer in the proceeding;
(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding . . . .

28 U.S.C. §§ 455(a), (b)(4) and (5).

81

The issue of whether the district judge should have recused was first raised by defendant Lonny Bowers in his pro se motion for new trial. In that motion, Lonny Bowers argued that the district judge "knew that her spouse, Gordon Campbell, had a financial interest in the subject matter in controversy as well as an interest that could be substantially affected by the outcome of the proceedings within the meaning of § 455(b)(4)," and "in all likelihood knew that her husband had an interest that could be substantially affected by the outcome of the litigation in th[e] case within the meaning of § 455(b)(5)(iii) . . . ." JA at D17108. In support, Lonny Bowers alleged that Campbell was a "member" of the law firm "of Parsons, Behle & Latimer, . . . wh[ich] handle[d] a substantial portion of [ClearOne's] litigation caseload," and "ha[d] procured patents pertaining to key electronic systems at issue in th[e] litigation." Id. Lonny Bowers argued that, "had [the WideBand defendants] prevailed in th[e] litigation, Mr. Campbell's interest—and by extension [the district judge's] interest—in the company could have been substantially affected, particularly from an economic standpoint." Id. at D17108-09.

ClearOne, in its brief in opposition to Lonny Bowers' motion for new trial, refuted Lonny Bowers' allegations regarding Mr. Campbell:

> First, [Parsons, Behle & Latimer] is not counsel of record for ClearOne in this case, and has not otherwise been involved in the litigation. Second, to the extent ClearOne has used, or currently uses, [Parsons, Behle & Latimer's] services for purposes outside of this litigation, [Mr.] Campbell has not worked, and does not work,

82

for ClearOne. Third, according to the publicly-available Internet resources, such as martindale.com, Mr. Campbell is neither an associate nor shareholder of [Parsons, Behle & Latimer], but is "of counsel." As such, his financial interest in the firm, if any, is likely limited. Moreover, there has been no evidence presented that would indicate that ClearOne's financial livelihood is in any way dependent on the outcome of this case. Therefore, any financial interest held by any person in the viability of [Parsons, Behle & Latimer], and any decision whether ClearOne would use [Parsons, Behle & Latimer] for transactional work in the future, would have nothing to do, whatsoever, with whether ClearOne prevailed in this case.

Id. at D17430-31. Lonny Bowers did not file a reply to ClearOne's opposition brief.

The district court ultimately rejected Lonny Bowers' arguments in an order and memorandum and decision issued on April 20, 2009. Id. at D17547. In doing so, the district court stated, in pertinent part: "Mr. [Lonny] Bowers . . . alleges that the court had an improper personal financial interest in the outcome of the trial. His allegations are not supported by the evidence or law."[14] Id. at D17566.

On appeal, Appellants make no attempt to explain how the district court abused its discretion in denying the pro se motions of Lonny Bowers and Donald Bowers. Instead, Appellants' opening brief simply repeats, in almost identically worded form, the arguments that were asserted by Lonny Bowers in his pro se motion for new trial, and that were directly refuted by ClearOne in its opposition to that motion. Moreover, Appellants' counsel conceded at oral argument that,

---

[14] At a June 3, 2009 evidentiary hearing, Donald Bowers orally moved for the district judge to recuse, citing the same reasons asserted in Bowers' motion for new trial. The district court summarily denied Donald Bowers' oral motion.

83

contrary to the assertions made by Lonny Bowers below and in Appellants' opening brief, Mr. Campbell was not a partner in the firm of Parsons, Behle & Latimer, but rather was of counsel to that firm. Appellants' counsel likewise conceded that Appellants had no evidentiary support for the allegations that Mr. Campbell, and in turn the district judge, had a financial interest in the subject matter in controversy, or an interest that could have been substantially affected by the outcome of this litigation.

We conclude that these concessions effectively dispose of the question of whether there was an actual conflict of interest that would have required the district judge's recusal under § 455(b). We further conclude, based upon the combination of these concessions and the lack of any other factors suggesting partiality concerns arising from Mr. Campbell's employment, that recusal was not required under § 455(a). Thus, in sum, we conclude the district court did not abuse its discretion in denying the pro se motions of Lonny Bowers and Donald Bowers.

*Award of attorneys' fees and costs*

The Appellants contend that the district court erred in affirming the magistrate judge's award of attorneys' fees and costs. "We review de novo the legal analysis providing the basis for the award or denial of attorney fees." W. Am. Ins. Co. v. AV&S, 145 F.3d 1224, 1230 (10th Cir. 1998). We review for abuse of discretion the amount of a fee or cost award. Anchondo v. Anderson,

84

Crenshaw & Assocs., L.L.C., 616 F.3d 1098, 1101 (10th Cir. 2010).

The Appellants have failed to identify where in the record on appeal they raised this issue and where the district court ruled on it. Their opening brief includes a single record cite to a declaration filed by ClearOne's counsel outlining the fees and expenses incurred by ClearOne in connection with the district court's two 2009 show cause orders. Aplt. Br. at 81 (citing JA at D22443). It is not entirely clear, however, whether the Appellants' arguments are limited to that fee and expense award, or instead are aimed at all of the fee and expense awards. Out of an abundance of caution, we will therefore assume the Appellants are challenging all of the fee and expense awards.

*a) Pretrial and trial related fees and expenses*

On May 12, 2009, ClearOne filed a motion for award of attorneys' fees and related nontaxable expenses. The motion asserted that, because the jury found that the WideBand defendants' misappropriation of trade secrets was willful and malicious, Utah law authorized an award of fees and nontaxable expenses in favor of ClearOne. In support of the motion, ClearOne submitted a declaration from its lead attorney, along with over 1400 pages of exhibits. Notably, Biamp was the only defendant to respond to ClearOne's motion.

On December 30, 2009, the magistrate judge issued a memorandum order and decision granting in part ClearOne's motion. The memorandum order concluded that (a) all of the defendants were jointly and severally liable to

ClearOne for the sum of $983,879.90 in fees and nontaxable expenses, (b) Biamp was liable to ClearOne for the sum of $118,025.00 in fees and nontaxable expenses, and (c) the WideBand defendants were jointly and severally liable to ClearOne for the sum of $907,645.87 in fees and nontaxable expenses. Together, these fee and expense awards totaled $2,009,550.33.

On January 14, 2010, the WideBand defendants filed an objection to the magistrate judge's memorandum order and decision. Therein, the WideBand defendants first complained that when ClearOne's motion was filed, they were proceeding pro se and thus did not have access to the sealed declarations submitted by ClearOne's counsel. The remainder of the objection was worded in similar fashion to the portion of the WideBand defendants' appellate brief regarding the fee and expense issue. Ultimately, the WideBand defendants argued in their objection that ClearOne's fee and expense request "should be reduced by at least thirty-three percent . . . or, in the alternative, a hearing should be set, and the Defendants afforded an opportunity to be heard regarding these amounts." JA at D22652.

*b) Contempt related fees and expenses against Donald Bowers*

On September 3, 2009, the district court issued a memorandum decision and order of contempt against Donald Bowers for violating the district court's June 26, 2008 order enjoining encumbrance or transfer of disputed software codes. In support, the district court found that Donald Bowers had encumbered

WideBand's intellectual property by filing a UCC-1 financing statement in Massachusetts on November 6, 2008. The order directed Donald Bowers, in pertinent part, to reimburse ClearOne for its reasonable attorneys' fees and costs incurred in pursuing the contempt order against him. In turn, the magistrate judge issued a memorandum decision and order on January 19, 2010, awarding $57,188.61 in fees to ClearOne. On February 2, 2010, Donald Bowers filed a written objection to the magistrate judge's memorandum decision and order.

*c) Contempt related fees and expenses against Lonny Bowers, Yang, WideBand, and DialHD*

On November 19, 2009, the district court issued a memorandum decision and order of contempt concluding, in pertinent part, "that ClearOne ha[d] not shown by clear and convincing evidence that . . . Chiang, Versatile, . . . and David Sullivan [we]re in contempt of court," but that "ClearOne ha[d] shown by clear and convincing evidence that . . . [Lonny] Bowers, . . . Yang, WideBand . . . , and third-party collaborator DialHD . . . [we]re in contempt of court for violation of the court's April 2009 Permanent Injunction and August 2009 Temporary Restraining Order for selling WideBand's Simphonix Si-400 product in the guise of DialHD's AEC4 and HD4551 products, all of which contain[ed] the Honeybee Code." JA at D22291. As part of that order, the district court ordered the contemnors "to pay attorneys' fees and damages sustained by ClearOne as a result of their contemptuous behavior . . . ." Id. To effectuate that

order, the district court directed ClearOne to "submit an affidavit and documentation of the costs and attorneys' fees," and in turn directed the magistrate judge to "issue a ruling awarding those costs and fees reasonably incurred in relation to" the district court's first order to show cause. Id. at D22353. "The fees and costs, if reasonable and documented," the district court held, "w[ould] be awarded to compensate ClearOne for its direct losses incurred in bringing the actions of the Contemnors to the attention of the court and obtaining the relief granted herein." Id.

On December 21, 2009, ClearOne's counsel filed a declaration in support of an award of attorneys' fees. The declaration noted that ClearOne utilized four attorneys, one paralegal, and one law clerk from the same law firm to perform work that fell within the scope of the district court's directive. The declaration further noted that the law firm "charge[d] [ClearOne] a flat percentage for internal costs of 2% of the amount of attorney fees billed," as well as the full amount of external costs. Id. at D22448. The declaration stated that, as reflected on a spreadsheet attached thereto, "the total attorney fees and expenses" that fell within the scope of the district court's order was "$184,506.52," an amount that had been "charged to, and paid by, ClearOne." Id. at D22449

On January 5, 2010, WideBand, Yang, Lonny Bowers and DialHD filed a response to ClearOne's declaration. Notably, the bulk of that response was worded in similar, if not identical, fashion to the portion of the WideBand

88

defendants' appellate brief regarding the fee and expense issue. In particular, the response complained that the declaration and supporting documentation provided a "vague, imprecise, non-contemporaneous accounting of the work that was supposedly performed by [ClearOne's] counsel." Id. at D22508. The response, in turn, argued that ClearOne's "request for attorney's fees, costs and expenses . . . should be reduced by at least thirty-three percent . . . or, in the alternative, a hearing should be set, and the Defendants and Interested Parties afforded an opportunity to be heard regarding these amounts." Id. at D22510.

On January 29, 2010, the magistrate judge issued a memorandum decision and order concluding that ClearOne's submission was "proper in every respect" and adequately documented. Id. at D22667. The magistrate judge further concluded that the WideBand defendants' attorney, Randolph Frails, "had previously [been] prohibited . . . from ClearOne's protected information," and thus ClearOne's "documentation [in support of its fee and expense] request was rightfully withheld from . . . Frails . . . ." Id. Moreover, the magistrate judge noted that Frails failed to arrange for the WideBand defendants' local Utah counsel "to sign the Undertaking attached to the [district court's] Confidentiality Order in th[e] case," which would have allowed local counsel, "or any other proper representative of . . . Frails, to access, review, and respond to ClearOne's documentation." Id. Accordingly, in conclusion, the magistrate judge ordered "that . . . [Lonny] Bowers, . . . Yang, WideBand . . . , and . . . DialHD . . . [we]re

89

jointly and severally liable to ClearOne in the sum of $184,506.52." Id. at
D22668.

   *d) The district court's order affirming the magistrate judge's decisions*

   On March 25, 2010, the district court issued an order and memorandum
decision overruling the defendants' objections, affirming the January 19, 2010,
and February 3, 2010 orders, and treating the December 30, 2009 decision as a
report and recommendation (R&R) and adopting the R&R as its own order.  In
adopting the R&R, the district court concluded, in pertinent part, that the
WideBand defendants "ha[d] waived their right to object to" the R&R because
"[t]hey did not respond to ClearOne's motion for attorneys' fees and costs when it
was before" the magistrate judge.  Id. at D22725.  The district court also
concluded, alternatively, that even if the WideBand defendants had not waived
their objections, there was no merit to them.

   *e) Appellants' arguments*

   On appeal, the Appellants do not directly challenge either the magistrate
judge's orders or the district court's final order affirming and adopting those
orders.  Instead, the WideBand defendants simply repeat, in nearly identical
terms, the arguments they asserted below in opposition to ClearOne's fee and cost
requests.  Specifically, they contend that, "[o]n their faces, ClearOne's documents
[outlining their fees and expenses incurred] were vague, imprecise, non-
contemporaneous accountings of the work that was supposedly performed by its

90

counsel." Aplt. Br. at 81. The Appellants further argue that the deficiencies were "compounded by the fact that, given the number of attorneys involved (four in all), there is an extremely high likelihood that many if not all of the attorney's services [we]re duplicative in nature." Id. "Moreover," they argue, "ClearOne offered no evidence showing what the comparable rates for the services its attorneys allegedly performed would be." Id. As a result, they argue, "[t]he Magistrate Court could not have possibly deduced a reasonable hourly rate or number of hours reasonably spent from such an incomplete record." Id. "[T]he Trial Court," they argue, "should have either held a hearing in which the fees and costs requested by ClearOne (along with all documents in support thereof and in opposition thereto) were reviewed by all parties, or reduced the fees and costs on its own volition," and its "failure to do so was an abuse of discretion." Id. at 82.

These arguments are largely speculative since neither the Appellants nor their current counsel, as a result of being subject to a confidentiality order issued by the district court, actually viewed the supporting documentation filed under seal by ClearOne. As the district court noted, had the Appellants "wanted to have counsel review and properly challenge ClearOne's fee application[s], they could have used their Utah counsel to obtain access to, review, and respond to [those] fee application[s]." JA at D22726. Further, undoubtedly due to their failure to actually view ClearOne's supporting documentation, the Appellants do not specifically identify what they believe the deficiencies in ClearOne's submissions

91

were.  In any event, the magistrate judge, who actually reviewed ClearOne's submissions, found ClearOne's submissions to be proper and non-duplicative, and the Appellants fail to explain how those rulings were erroneous.  As for the Appellants' complaint that "ClearOne offered no evidence showing what the comparable rates for the services its attorneys allegedly performed would be," it is frankly unclear what the Appellants are referring to, or what they would have required ClearOne to file.  According to the record, ClearOne's submissions detailing its fees were tied specifically to the amounts charged by its attorneys to ClearOne.

In sum, we conclude the district court did not abuse its discretion in affirming, or adopting as its own, the magistrate judge's orders granting ClearOne's fee and cost requests.

*Emergency motion for access to "Court Only User Docket"*

In their appellate reply brief, the WideBand defendants argue that the district court erred in permitting ClearOne to file documents that were maintained on a separate "Court Only User Docket."  Aplt. Reply Br. at 38 (capitalization in original omitted).  According to the WideBand defendants, "the existence of" this "Court Only User Docket" "was finally brought to light on February 11, 2011" in a district court docket entry noting that "[a] court user only docket sheet . . . [wa]s being transmitted by email to counsel for the parties who ha[d] access to attorneys' eyes only information" and would thus "permit counsel for Biamp to

92

evaluate the need for any documents identified in its motion" for clarification of a November 3, 2010 order issued by the magistrate judge regarding certain sealed documents in the case.[15] Id. (quoting Dist. Ct. Docket No. 2426).

The driving concern behind this issue appears to be the WideBand defendants' belief that the district court, through use of this "Court Only User Docket," afforded ClearOne special privileges in terms of filing pleadings or other documents. Relatedly, the WideBand defendants complain that, "[p]rior to trial, 65 docket entries were sealed and rendered inaccessible by" them. Id. at 39. The WideBand defendants in turn argue that "[t]he existence of dual docketing systems in this case is highly irregular, especially where there were other means by which the Trial Court could seal or mark particular documents as confidential — means that were much more conducive to [their] constitutional rights." Id. at 40. "In the interests of fairness," they argue, "this case should be remanded to determine the exact nature and purport of the documents contained in the 'Court Only User Docket.'" Id.

We reject the WideBand defendants' arguments for a number of reasons.

[15] The magistrate judge's November 3, 2010 order concerned documents that were seized from Lonny Bowers' possession pursuant to a September 1, 2010 seizure order. Dist. Ct. Docket No. 2339, at 1. Because those documents contained material treated as "Confidential" under the protective order in the case, redacted versions of those documents were filed. Id. at 1-2. Biamp subsequently "asked for access to all the sealed docket entries." Id. at 2. The magistrate judge subsequently directed that Biamp be provided with a copy of the "Court Only User Docket" so that it could refine its request for access to the sealed documents.

To begin with, this purported issue has never been ruled on in the district court. As we have noted, on March 3, 2011, the WideBand defendants filed a pleading entitled "EMERGENCY MOTION FOR ACCESS TO 'COURT ONLY USER DOCKET,'" that essentially raised the same arguments that the WideBand defendants are now urging on appeal. Dist. Ct. Docket No. 2454. That motion, however, has not yet been ruled on by the district court. Second, and relatedly, the WideBand defendants are raising this issue for the first time in their reply brief. Ordinarily, however, "[t]his court does not . . . review issues raised for the first time in a reply brief." Cohen-Esrey Real Estate Servs., Inc. v. Twin City Fire Ins. Co., 636 F.3d 1300, 1306 n.3 (10th Cir. 2011). Third, even ignoring these procedural deficiencies, there is clearly no merit to the WideBand defendants' arguments. Apparently, they are unaware that the district court, like this court, maintains both a publicly accessible docket and a docket intended for court personnel only. There is simply no basis for concluding that this system provided any litigation advantage to ClearOne. Indeed, there is no evidence that ClearOne had access to the so-called "Court Only User Docket." Lastly, with respect to the WideBand defendants' argument that they were not allowed access to certain documents prior to trial, the record on appeal does establish that the district court's confidentiality orders effectively precluded the WideBand defendants from viewing certain ClearOne documents. However, those confidentiality orders allowed the WideBand defendants' counsel (except for

94

current counsel, Randolph Frails, who was retained well after the entry of final judgment) and their expert witnesses access to the ClearOne documents.  Thus, there is simply no basis for concluding that the WideBand defendants' were prejudiced in any way (and, notably, the WideBand defendants do not make any specific allegations of prejudice).

## III

As a final matter, we note that the Appellants have filed with this court a Notice of Joinder pursuant to Federal Rule of Appellate Procedure 28(i), purporting to "join in all relevant arguments set forth in . . . Biamp['s] . . . Opening Brief [in Appeal Nos. 09-4097, 10-4090, and 10-4168] filed on January 11, 2011."  Notice of Joinder at 2, ClearOne v. Bowers, et al., No. 09-4092 (10th Cir. Jan. 21, 2011).  Federal Rule of Appellate Procedure 28(i) states that "[i]n a case involving more than one appellant or appellee, including consolidated cases, any number of appellants or appellees may join in a brief, and any party may adopt by reference a part of another's brief."  Although the Appellants' consolidated appeals are related to Biamp's appeals, they are not consolidated with those appeals.  See Final Briefing Scheduling Order, ClearOne v. Bowers, et al., No. 09-4092 (10th Cir. Aug. 20, 2010).  Therefore, the WideBand defendants' invocation of the rule is inappropriate.

Further, to the extent that the Appellants' pleading could be construed as motion to join in Biamp's brief, such motion is denied.  The Appellants have filed

95

their own briefs.  They cannot file a blanket adoption of Biamp's brief and, thereby, essentially avail themselves of two sets of briefs.  Rule 28(i) is not an end-run around briefing limitations, including page limits.

## IV

The judgment of the district court is AFFIRMED.  Appellants' Notice of Joinder is DENIED.  ClearOne's motion to strike new issues raised in the Appellants' reply brief is DENIED as moot.